Delia L. FERNANDEZ,
Plaintiff-Appellant,

v.

WYNN OIL COMPANY, a corporation,
and Wynn's International, Inc., a corporation, Defendants-Appellees.

No. 79–3598.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1981.

Decided Aug. 17, 1981.

Michael Maroko, Allred, Maroko & Gold-
berg, Los Angeles, Cal., Sandra G. Bryan,
E. E. O. C., Washington, D. C., for plaintiff-
appellant.

Jeffrey C. Freedman, Goldstein, Freed-
man & Klepetar, Los Angeles, Cal., for de-
fendants-appellees.

Before FERGUSON and BOOCHEVER,
Circuit Judges, and REDDEN,* District
Judge.

* The Honorable James A. Redden, United States
District Judge for the District of Oregon, sitting
by designation.

FERGUSON, Circuit Judge:

Fernandez appeals a judgment in favor
of her former employer on her claim of sex
discrimination. The district court found
that the employer's decision not to promote
Fernandez was based on her lack of qualifi-
cations rather than her sex and was conse-
quently justified by a valid business pur-
pose. Alternatively, it found masculine
gender a bona fide occupational qualifica-
tion since the job sought required dealings
with nations that may refuse to transact
business with women. The decision is af-
firmed solely on the former ground.

I.

Wynn Oil Company (Wynn) is an interna-
tional petro-chemical manufacturer located
in Orange County, California. It hired Fer-
nandez in 1968. From 1972 through 1973,
Fernandez served as administrative assist-
ant to Louis Dashwood, the vice-president
of Wynn's International Operations divi-
sion.

Dashwood testified, as a witness for Fer-
nandez, that during this time Fernandez
performed many functions of his job but he
chose not to promote her because she was so
valuable to him as an administrative assist-
ant. He also testified that he felt Latin
American clients would react negatively to
a woman vice-president of International
Operations.

Joseph Borrello was subsequently ap-
pointed Director of International Opera-
tions (DIO). In October 1975, Dashwood's
employment terminated and Borrello be-
came vice-president of Worldwide Market-
ing. Within three days, Borrello informed
Fernandez of plans to terminate her admin-
istrative assistant position. In March 1976,
Borrello hired Arturo Matthews to fill the
position of DIO, although Fernandez had
requested consideration for the job. In
April, Fernandez accepted an assignment as
manager of a different division. She was
discharged in February 1977.

In January 1978, Fernandez filed a complaint in district court against Wynn Oil Company, alleging that Borrello's refusal to promote her to the position of DIO was an act of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). Wynn defended on the ground that Fernandez' lack of qualifications for the job, rather than her sex, prompted Borrello's decision. Alternatively, Wynn argued that male sex is a bona fide occupational qualification (BFOQ), 42 U.S.C. § 2000e–2(e), for a job performed in foreign countries where women are barred from business.

Following a bench trial, the district court found for Wynn on both alternative grounds. Fernandez claims on appeal that the district court erred in reaching each of its conclusions. Wynn argues that both issues were determined correctly, but requests that we abandon the lower court's discussion of the BFOQ defense because sex was not a factor in Borrello's refusal to promote Fernandez. The American Jewish Congress, Mexican American Legal Defense and Educational Fund, Inc., Equal Employment Opportunity Commission, and Women's Equal Rights Legal Defense and Education Fund have presented amicus curiae briefs in opposition to the district court's BFOQ determination.

## II.

Discrimination cases under Title VII involve two common methods of discriminatory behavior by employers. In disparate treatment cases, the employer "treats people less favorably than others because of their race, color, religion, sex, or national origin." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977). In disparate impact cases, the employer uses "employment practices that are facially neutral ... but in fact fall more harshly on one group than another ...." *Id.* The instant appeal falls in the first category.

■ Under 42 U.S.C. § 2000e, a party complaining of discrimination by disparate treatment establishes a prima facie case by showing that (1) she was within a protected group; (2) she applied and was qualified for a job for which the company was seeking applicants; (3) she was rejected; and (4) after her rejection, the employer continued to seek applicants. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If a prima facie case is established, the employer bears the burden of demonstrating that it refused the applicant for a legitimate, non-discriminatory reason. *Id.*

■ The district court in the instant case found that Fernandez failed to prove a prima facie case because she did not demonstrate that she was qualified for the job as required by factor (2), above. Further, it found that even had Fernandez established a prima facie case, her qualifications compared to Matthews' justified Borrello's hiring decision for sound business reasons. Unless these findings are clearly erroneous, they must not be disturbed on appeal. *McLean v. Phillips-Ramsey, Inc.*, 624 F.2d 70, 71 (9th Cir. 1980).

■ The record supports the district court's findings. Testimony was presented that Fernandez was not proficient in the English language and had difficulty with articulation. She had no secondary education. Borrello testified that he did not seriously consider Fernandez because she had a drinking problem and erratic work habits. He also testified that she was indiscreet in her criticism of him and in infringing on the job authority of others. Finally, she had refused an assignment to address a group of listeners and there was testimony that she had exhibited poor supervisory and marketing skills.

■ Fernandez has therefore failed to demonstrate that the district court erred in failing to find her qualified for the DIO position. If an applicant is not qualified for the job in question, she has failed to establish a prima facie case. *Morita v. Southern California Permanente Medical Group*, 541 F.2d 217, 219 (9th Cir. 1976), *cert. den.*, 429 U.S. 1050, 97 S.Ct. 761, 50 L.Ed.2d 765

(1977).[1]  Congress did not intend the Civil Rights Act to saddle business with unqualified employees.  *Id.*

Furthermore, even if Fernandez had been able to establish a prima facie case, the district court was justified in ruling for Wynn by finding that Wynn had a legitimate, non-discriminatory purpose in preferring to hire Matthews.  The record demonstrates that Matthews held a master's degree in business administration and had a prior management record at Wynn in international and domestic markets.  He had implemented a highly successful merchandising program in a Wynn industrial division.  He had demonstrated skills in management, delegation of work, supervision, and public speaking.  Borrello testified that all of these qualities were considered necessary or highly desirable for the DIO position.

■  An employer's decision may be justified by the hired employee's superior qualifications unless the purported justification is a pretext for invidious discrimination.  *Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1269 (9th Cir. 1980).  The record supports the trial court's finding of Matthews' superior qualifications.  It does not show that Fernandez countered this justification with proof of pretext.

We hold that the district court was not clearly in error in finding, first, that Fernandez was unqualified and had accordingly failed to allege a prima facie case and, second, that sound business practice justified Borrello's decision to hire Matthews.

### III.

The district court found masculine gender a bona fide occupational qualification for the position in question.  It based this conclusion on testimony that Wynn's South American clients would refuse to deal with a female DIO.  The district court erred in its factual findings and legal conclusions.

■  Testimony in the record indicated that a female would have difficulty in conducting business in South America from a hotel room.  No proof was adduced, however, that the position required work of this nature.  Nor does the record provide any basis for the district court's findings that hiring Fernandez would "destroy the essence" of Wynn's business or "create serious safety and efficacy problems."  There is, in short, no factual basis for linking sex with job performance.  The BFOQ finding is accordingly factually erroneous.

Even if the record supported the district court's factual conclusions, we would be compelled to reject the BFOQ finding in this case because it is based on an erroneous interpretation of Title VII.  The district court found that sex discrimination must be compelled by business considerations in order to qualify as a BFOQ.  It also stated that customer preferences should not be bootstrapped to the level of business necessity.  Nevertheless, it held that customer preferences rise to the dignity of a bona fide occupational qualification if "no customer will do business with a member of one sex either because it would destroy the essence of the business or would create serious safety and efficacy problems."  On this basis, the district court found the customer preferences of Wynn's clients a BFOQ.

■  That conclusion cannot stand.  Title 42, United States Code, § 2000e–2(e) permits hiring decisions to be based on gender if gender is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business.  However, stereotypic impressions of male and female roles do not qualify gender as a BFOQ.  *City of Los Angeles Dept. of Water v. Manhart*, 435 U.S. 702, 707, 98 S.Ct. 1370, 1374, 55 L.Ed.2d 657 (1978).  *See Blake v. City of Los Angeles*, 595 F.2d 1367 (9th Cir. 1979), *cert. den.*, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980).  Nor does

---

1.  Fernandez devotes much of her brief to bolstering her case with statistical evidence.  Because she never passed the first hurdle of establishing a prima facie case, we do not consider such evidence.  *Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1269 (9th Cir. 1980).

stereotyped customer preference justify a sexually discriminatory practice. *Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385, 389 (5th Cir.), *cert. den.*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). Furthermore, the Equal Employment Opportunity Commission has held that the need to accommodate racially discriminatory policies of other nations cannot be the basis of a valid BFOQ exception. EEOC Decision No. 72–0697, CCH EEOC Decisions 1971, ¶ 6317, at 4569. The EEOC has promulgated regulations stating that the only customer preference allowed as a BFOQ exception is one necessary for the purpose of genuineness or authenticity (e. g., a performer). 29 C.F.R. § 1604.2(a)(2) (1972).

*Blake, supra*, and *Diaz, supra*, held that customer preference based on sexual stereotype cannot justify discriminatory conduct. The court below relied on these cases, yet found that customer preference which prevents customers from dealing with the employer does qualify as a BFOQ. Nothing in those cases justifies this distinction.

Wynn attempts to distinguish *Diaz* by asserting that a separate rule applies in international contexts. Such a distinction is unfounded. Though the United States cannot impose standards of non-discriminatory conduct on other nations through its legal system, the district court's rule would allow other nations to dictate discrimination in this country. No foreign nation can compel the non-enforcement of Title VII here.[2]

### IV.

The judgment is AFFIRMED on the ground that sex was not a factor in Wynn's refusal to promote Fernandez. The lower court's analysis of the BFOQ issue is rejected.

---

**2.** *See American Jewish Congress v. Carter*, 19 Misc.2d 205, 190 N.Y.S.2d 218 (Sup.Ct. 1959), *modified*, 10 App.Div.2d 833, 199 N.Y.S.2d 157 (1960), *aff'd*, 9 N.Y.2d 223, 173 N.E.2d 778, 213 N.Y.S.2d 60 (1961) (denying employer's right to refuse to hire Jewish engineers because of Saudi Arabia's religious zealotry).