Carl RUCKER, Plaintiff-Appellant,
Cross-Appellee,

v.

**HIGHER EDUCATIONAL AIDS BOARD,**
Defendant-Appellee, Cross-Appellant.

Nos. 81–1448, 81–1521.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1982.

Decided Feb. 3, 1982.

Rehearing Denied March 18, 1982.

Kenneth R. Loebel, Habush, Habush & Davis, Milwaukee, Wis., for plaintiff-appellant, cross-appellee.

Robert D. Repasky, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendant-appellee, cross-appellant.

Before WOOD and POSNER, Circuit Judges, and WILL, Senior District Judge.[*]

POSNER, Circuit Judge.

This is an employment discrimination case, based primarily on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The plaintiff, Carl Rucker, was a supervisor for the defendant, the Higher Educational Aids Board, a Wisconsin state agency that provides counseling services to disadvantaged youths. Rucker, who is black, contends that the Board fired him because he opposed the efforts of his superiors to discriminate on racial and sexual grounds against a white woman who worked for the Board, Mary Phillips. Thus he invokes 42 U.S.C. § 2000e–3(a), which so far as relevant here forbids an employer to discriminate against an employee because "he has opposed any practice made an unlawful employment practice" by Title VII, including, of course, racial and sexual discrimination.

At trial Rucker presented evidence in support of the following facts. He had been hired by the Board in 1973, had been rapidly promoted, and in 1976 had received an Exceptional Performance Award from the Board's chief executive officer. Also in 1976 Miss Phillips, who had been working as a typist at the Board, applied for a professional position as a counselor in an office where Rucker would be her supervisor. Rucker's immediate superior, Spraggins, also a black man, told Rucker that he wanted to prevent Miss Phillips from getting the job as counselor because she had not been "cooperating," which Rucker interpreted as referring to the fact that Spraggins in his presence had once placed a hand on Miss Phillips' breast and she had pushed it away. Spraggins asked Rucker to write a memorandum to him stating that the local black community did not want a white employee to serve them as a counselor. Rucker refused. Spraggins then had Rucker attend a meeting that Spraggins had arranged with two black ministers, who told Rucker: "You're going to have to get a black woman and put her on that job. It's as simple as that." On the way out of the meeting one of the ministers said to Spraggins that he had better get rid of that "nigger," meaning Rucker. After this Spraggins repeated his request to Rucker to write the memorandum about community feeling, and Rucker again refused.

Shortly afterward, Miss Phillips was appointed to the counselor's position, initially on a six-month probationary basis. During this period she claimed to be having further problems with Spraggins and wrote him complaining about his hostile attitude toward her, which she summarized in the phrase "vile crap." He wrote back accusing her of lying and other misbehavior, and she responded by filing with the Board a written grievance protesting Spraggins' conduct toward her. Rucker then wrote a memorandum to Spraggins in which he defended Miss Phillips and in addition stated, "I have good reason to believe the charges . . . forwarded to you from Mary Phillips . . . are true." This was on December 28, 1976. Shortly afterward, in a meeting with the Board's chief executive officer, Rucker was given to understand that he should give Miss Phillips a poor evaluation so that she would not receive permanent status at the end of her probationary period. He refused

* Of the Northern District of Illinois.

and instead, on January 18, 1977, submitted a written evaluation in which he found her to be qualified for a permanent appointment. Three weeks later Rucker was suspended from his job on a variety of charges, and the next day he filed with the Equal Employment Opportunity Commission a complaint that his suspension was in retaliation for his refusal to be a party to proposed discrimination. A month later he was fired; Miss Phillips had meanwhile received her permanent appointment.

We have given the plaintiff's version of the facts. The defendant presented a sharply conflicting version and the district judge had to choose between them. To assist him in doing this the parties at the close of the trial offered to submit post-trial briefs and proposed findings of fact and conclusions of law, but the judge refused the offer and delivered an impromptu oral opinion.

■ The opinion contains a sequence of legal rulings. The first is that in deciding whether Miss Phillips should be appointed or retained, the Board was entitled to consider the preferences of its clientele, which is apparently largely black, for a counselor of the same race. Customer preference has repeatedly been rejected as a justification for discrimination against women. See, e.g., *Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1276–77 (9th Cir. 1981). We are unaware of any cases dealing with the issue in the context of racial discrimination, and this for a simple reason. The customer-preference argument is invariably based on 42 U.S.C. § 2000e–2(e)(1), which permits employers to make employment decisions on the basis of "religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." Race and color— the other two grounds of discrimination that are made unlawful by Title VII—are omitted, and certainly not by an oversight. See *Swint v. Pullman-Standard*, 624 F.2d 525, 535 (5th Cir. 1980). Subject, possibly, to an extremely narrow judge-made exception for "business necessity," see *Miller v.*

*Texas State Bd. of Barber Examiners*, 615 F.2d 650, 653–54 (5th Cir. 1980), which the defendant in this case does not claim to be within, Title VII is a blanket prohibition of racial discrimination, rational and irrational alike, even more so than of other forms of discrimination attacked in Title VII. It is therefore no defense to a charge of having discriminated by paying a black man a lower wage than a no better qualified white that the "market places different values on black and white labor," *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1075 n.2 (5th Cir. 1981), though it is not irrational to pay your employees as little as they will accept. It is similarly not irrational, but it is clearly forbidden by Title VII, to refuse on racial grounds to hire someone because your customers or clientele do not like his race.

■ So the judge's ruling in this case can be upheld only if "race" and "color" in Title VII are read as if the words immediately following them in the statute were "other than white." This is just what the Supreme Court refused to do in *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280, 96 S.Ct. 2574, 2579, 49 L.Ed.2d 493 (1976), when it held that "Title VII prohibits racial discrimination against the white petitioners upon the same standards as would be applicable were they Negroes." *United Steelworkers of America v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), carved an exception (as had been anticipated in *McDonald*, see 427 U.S. at 280–81 n.8, 96 S.Ct. at 2579 n.8) to this color-blind interpretation of Title VII for plans of affirmative action having certain properties, but otherwise left the ruling in *McDonald* intact. The defendant in this case does not argue that Spraggins' opposition to hiring Miss Phillips was part of a plan of affirmative action; nor is there any suggestion that blacks are underrepresented in professional positions with the Board, which would be the normal predicate of an affirmative action defense. If there was discrimination against Miss Phillips, it was not protected by *Weber*; it was condemned by *McDonald*.

As a detail, we note that the preference of the local black community for a black counselor was not, as the court below seems to have thought, conceded by Rucker. His evidence was that the ministers were not speaking for the community but were in cahoots with Spraggins. The court did not address this factual issue.

■ The district court concluded that Miss Phillips had not been a victim of racial discrimination. This conclusion followed in part from the court's erroneous belief that it is proper to base employment decisions on customer preferences where the customers in question are black, but more from the fact that Miss Phillips got the position she sought. But if, as Rucker alleged, she was subjected to unfair criticisms and general workplace "hassle" by Spraggins because she was a white invading an enclave that he hoped (whether to cater to the preferences of his clientele or for some other reason) to keep black, then she was a victim of unlawful discrimination in the "conditions . . . of employment." 42 U.S.C. § 2000e–2(a)(1). In any event, whether or not she was a victim of unlawful discrimination was dispositive only if, as the court next ruled, Rucker had to prove that she was in order to make out a prima facie case that his Title VII rights were violated.

■ *Berg v. LaCrosse Cooler Co.*, 612 F.2d 1041 (7th Cir. 1980), among many other cases, holds that it is a violation of 42 U.S.C. § 2000e–3(a) to fire an employee because he opposed discrimination against a fellow employee, even if he was mistaken and there was no discrimination. The mistake must, of course, be a sincere one; and presumably it must be reasonable, as assumed in *Berg, supra*, at 1045, for it seems unlikely that the framers of Title VII would have wanted to encourage the filing of utterly baseless charges by preventing employers from disciplining the employees who made them. But it is good faith and reasonableness, not the fact of discrimination, that is the critical inquiry in a retaliation case.

■ Moreover, Rucker's allegations make this a retaliation case in a more fundamental sense than in the usual case where an employee is fired for having made a charge of discrimination that did not stick. Rucker's theory is that his prompt and vigorous opposition averted unlawful discrimination; and we think an *a fortiori* violation of section 2000e–3(a) is committed when an employee opposes an attempt to discriminate against a fellow employee so successfully that the employer desists from the attempt and then fires the "whistle blower" for what he had done. Cf. *EEOC v. St. Anne's Hosp.*, 664 F.2d 128 (7th Cir. 1981). Not only is it irrelevant on this theory of the case that Miss Phillips was appointed and retained, but it provides an additional motive for Spraggins to have acted vindictively toward Rucker; he might have been more magnanimous had Rucker failed to protect her. That at least was Rucker's theory of the case, and the oral opinion makes no reference to it.

Since the district court held that Rucker had not made out a prima facie case of liability under section 2000e–3(a), it did not consider the Board's evidence that even if Rucker was opposing discrimination within the meaning of the statute he was fired for other reasons, or Rucker's evidence that the other reasons were mere pretexts. Nevertheless, the court stated in its opinion that "Mr. Rucker seems like a fine upstanding man, as far as I can determine here. I'm not making any finding here that you, Mr. Rucker, used the state telephone improperly or anything of that nature." (Charging personal calls to the Board was one of the reasons given for Rucker's dismissal.) If this remark was meant as a serious finding of fact, it went far to sustain Rucker's claim—for why would this fine upstanding man be fired for misconduct, except as a cover for retaliation against him for his support of Miss Phillips? But the court may just have been trying to lessen Rucker's disappointment at losing the case. We hope that was not the court's intent; the business of the courts is to do justice rather than to spread good feeling. But we are not sufficiently certain what the court in-

tended by the remark to treat it as a genuine finding of fact on which to base a conclusion that Rucker has proved his case.

Another puzzling feature of the court's oral opinion should be noted. Rucker testified that he had been opposing sexual as well as racial discrimination against Miss Phillips, and the sexual advances that Spraggins allegedly made to her may have violated Title VII as interpreted in *Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.1981); yet the oral opinion treats Rucker's case as involving only racial discrimination. A brief comment in the opinion suggests that the court may have found as a fact that Miss Phillips was not subjected to sexual discrimination. Even so, for the reasons we have indicated, that would not dispose of Rucker's claim that he was fired for opposing sexual discrimination as well as racial.

If the oral opinion were all that we had by way of a district court decision, we would obviously have to reverse. But there is more. After the court delivered its opinion, Rucker moved for reconsideration. The court denied the motion in a three-page written opinion that the defendant understandably would like us to treat as the court's Rule 52(a) findings and conclusions. In it the court changed the grounds of decision as stated in the oral opinion, though without saying that this was what it was doing. The court now based its decision on two alternative findings. The first was that "it was not reasonable for Mr. Rucker to think that a white woman was being discriminated against." The court did not explain this finding beyond observing that Rucker could not reasonably have interpreted the fact that the two ministers had expressed a preference for a black counselor as evidence that the Board was discriminating. The court's second finding was that Rucker had failed to show a causal connection between his support for Miss Phillips and his discharge. The court offered no explanation beyond noting that (1) Miss Phillips had been hired in the summer of 1976 and Rucker was not fired until March 1977, that is, (2) after she was given permanent status and (3) after he had had many other disputes with the Board; (4)

Rucker was not fired because of the written complaints that he filed after he was suspended.

The subsidiary findings are inadequate. Rucker presented other evidence of discrimination against Miss Phillips besides the statement of the to ministers; the court did not discuss that evidence. So far as the facts relating to the court's causal analysis are concerned, (3) and (4) are irrelevant because Rucker's theory was that his firing was the outcome of a process set irrevocably in motion by his intervention on behalf of Miss Phillips; the disputes and written complaints referred to came later. And for reasons explained earlier facts (1) and (2) do not contradict Rucker's "whistle blower" theory of why he was fired.

We are left, then, with naked, conclusional findings. The trial judge may in his own mind have resolved the crucial factual disputes in the case against Rucker, thus putting Rucker out of court under any tenable theory of a section 2000e–3 violation, but we cannot tell because the judge's explicit findings do not resolve those disputes. A further difficulty of interpretation is the uncertain relationship between the two opinions. When the district judge delivered his oral opinion he said it would be the vehicle of his Rule 52(a) findings. He never retracted that statement. His written opinion purports to be a decision not on the merits of the case but on Rucker's motion to reconsider the oral decision. As a result we do not know, for example, what weight the judge ultimately meant to give his earlier remark that Rucker was a "fine upstanding man." And although the view of the law taken in the two decisions is inconsistent, we cannot tell whether the judge was aware of any inconsistency.

■ Rule 52(a) requires that the court in a bench trial "shall find the facts specially." This means that "there must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion." *Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed.

1485 (1943); see, e.g., *Denofre v. Transp. Ins. Rating Bureau*, 532 F.2d 43, 45 (7th Cir. 1976). Otherwise the reviewing court has no way of knowing what the facts of the case are. Certainly we cannot ourselves resolve the pervasive issues of credibility in the record of this case. Although in many bench trials it is feasible and desirable for the judge to decide the case at the conclusion of trial, especially if there is a definitive pretrial order and the judge has kept careful notes throughout the trial, in the present case—we can see with the benefit of hindsight—an oral opinion was not an effective method of compliance with Rule 52(a). Probably the judge should have allowed the parties to submit briefs and proposed findings of fact after the close of trial and then should have issued written findings, whether numbered consecutively or narrated in an opinion, clearly resolving each genuine issue of material fact.

We could remand the case to the same judge who tried it, with directions to comply with Rule 52(a) and reexamine the case under the correct legal standards; but the trial ended a year ago and the record may well be stale in the judge's mind. We think it best to remand for a new trial, which under Circuit Rule 18 will be conducted by a different judge.

■ Two issues remain to be considered. First, Rucker joined with his Title VII claim, in which he was asking that the Board be ordered to reinstate him, claims for damages under 42 U.S.C. §§ 1981, 1983, and 1985. Of the damage claims, the district judge discussed only the one under section 1983, which he dismissed on the ground that the plaintiff's burden of proof is heavier under that statute than under Title VII. Whether it is heavier or not, if this were the only justification for dismissal of the damage claims we would have to reverse because we do not know exactly what Rucker failed to prove. But in addition it is undisputed that the Board—the only defendant in this case—is a state agency. As such, it is immune from federal damages liability by virtue of the Eleventh Amendment. See *Alabama v. Pugh*, 438

U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Rucker's section 1981 and section 1985 claims fail on the same ground.

■ Second, the Board has cross-appealed from the district court's refusal to apply the doctrine of collateral estoppel to prevent Rucker from relitigating the finding by a state unemployment compensation board that he had been discharged for cause. The district court found that the compensation board had not given Rucker a full and fair opportunity to develop the facts pertaining to his discharge. This conclusion, which the defendant does not seriously contest, justified the court's refusal to apply collateral estoppel. See *Allen v. McCurry*, 449 U.S. 90, 95, 101, 101 S.Ct. 411, 415, 418, 66 L.Ed.2d 308 (1980).

The judgment below, insofar as it dismisses the plaintiff's Title VII claim, is reversed, and the case remanded for a new trial. The dismissal of the plaintiff's damage claims, and the order from which the defendant cross-appeals, are affirmed.

So Ordered.

HARLINGTON WOOD, Jr., Circuit Judge, concurring.

Although I fully agree with the general principles of law discussed in the preceding opinion, I view the oral and written opinions of Judge Evans a little more charitably.

I believe that Judge Evans' findings need some clarification, but they need only be repaired, not junked. In both of his opinions, he identified at least part of the issue to be whether or not Rucker was discriminated against because he spoke out in opposition to discrimination against the white employee. Judge Evans concluded by stating that he was unable to find any causal connection between Rucker's support of the white woman and his firing.

Judge Evans heard the evidence about the various reasons advanced by the employer for Rucker's firing and said in his oral opinion he would embark on that anal-

ysis if required. That evidence included testimony of the director of the agency, not Spraggins, that he could not believe Rucker. The evidence in support of the employer's reasons is too substantial to be ignored. Most of that evidence was previously aired in state administrative proceedings and finally ended up in the Circuit Court of Dane County, Wisconsin. The judge of that court concluded that Rucker's acts constituted "an intentional and substantial disregard of the employer's interest." It may be that Judge Evans would also conclude from the evidence that the reasons for the firing advanced by the employer were not pretextual, but that the pretext was in Rucker's efforts to picture his firing as a Title VII violation.

I do not consider Judge Evans' comment about Rucker seeming to be a "fine upstanding man" worthy of note one way or the other, but if Judge Evans meant to find that Rucker was also a "fine upstanding employee," then I would let him say so. Considering the troubled relationship within this agency, it at least appears that somebody had to go if the public was to be fully served by the agency.

Rucker was fired about 5 years ago and some kind of litigation has been going on about it ever since. Now that the case is headed back for a new trial with a different judge, I will not be surprised to see it all again another year. To bring in the same witnesses and paw over the same unsatisfactory internal office situation seems to me to be a waste of everybody's time and money.

I, therefore, concur in the general result reached in the majority opinion, but I respectfully disagree with the directed solution. Judge Evans is fully capable of reviewing this matter and clarifying his opinion and findings, particularly with the assistance of the majority's clarification of the issue. I would remand this case to give Judge Evans that opportunity, rather than issue new tickets to a rerun of an old show.

\* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement