ON REHEARING
ERVIN, Judge.
In his motion for rehearing of our opinion of January 31, 1991, Chandler argues that in reversing the final order of the Florida Commission on Human Relations (FCHR or Commission), which had found that the employer, Department of Corrections (DOC), committed an unlawful employment practice by not promoting Chandler, this court “sifted through the record” and identified a nondiscriminatory reason— the friendship that existed between the employee promoted and the chairperson of the three-person interview team that made the nomination — which the DOC had not raised at the hearing below, and that in doing so we violated certain principles of law developed in the federal sector construing Title VII of the Civil Rights of 1964, as amended (42 U.S.C. Sections 2000e to 2000e-17), after which Florida’s Human Rights Act is patterned. Cf. Increase Minority Participation by Affirmative Change Today of Northwest Fla., Inc. (IMPACT) v. Firestone, 893 F.2d 1189 (11th Cir.), cert. denied sub nom. Secretary of State of Fla. v. Walker, — U.S. -, 111 S.Ct. 133, 112 L.Ed.2d 100 (1990); Equal Employment Opportunity Comm’n v. West Bros. Dep’t Store of Mansfield, La., Inc., 805 F.2d 1171 (5th Cir.1986); Miller v. WFLI Radio Inc., 687 F.2d 136 (6th Cir.1982). Because DOC did not specifically raise as a defense to Chandler’s unlawful discrimination claim that the promotion was based on friendship,[1] we agree, pursuant to applicable case law, that it is more appropriate for us to remand the case to the agency with directions that the hearing officer’s findings of discrimination be clarified, instead of our simply reversing outright the finding of discrimination.
In so deciding, we consider it helpful to articulate in some detail the standards that have developed in the federal sector pertaining to an employee’s disparate treatment claim.[2] The United States Supreme *1186 Court set forth the procedure essential for establishing such claims in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which was then revisited in detail in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Pursuant to the Bur-dine formula, the employee has the initial burden of establishing a prima facie case of intentional discrimination, which once established raises a presumption that the employer discriminated against the employee. If the presumption arises, the burden shifts to the employer to present sufficient evidence to raise a genuine issue of fact as to whether the employer discriminated against the employee. The employer may do this by stating a legitimate, nondiscriminatory reason for the employment decision; a reason which is clear, reasonably specific, and worthy of credence. Because the employer has the burden of production, not one of persuasion, which remains with the employee, it is not required to persuade the trier of fact that its decision was actually motivated by the reason given. If the employer satisfies its burden, the employee must then persuade the fact finder that the proffered reason for the employment decision was a pretext for intentional discrimination. The employee may satisfy this burden by showing directly that a discriminatory reason more likely than not motivated the decision, or indirectly by showing that the proffered reason for the employment decision is not worthy of belief. If such proof is adequately presented, the employee satisfies his or her ultimate burden of demonstrating by a preponderance of evidence that he or she has been the victim of intentional discrimination. Id. at 252-56, 101 S.Ct. at 1093-95, 67 L.Ed.2d at 215-17.
As applied to a claim alleging discrimination resulting from an employer’s decision not to promote, the prima facie case an employee is required to establish is
that [he or] she belongs to a protected group, that [he or] she was qualified for and applied for a promotion, that [he or] she was considered for and denied the promotion, and that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiffs request for promotion was denied.
Bundy v. Jackson, 641 F.2d 934, 951 (D.C.Cir.1981) (modifying formula approved in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 & n. 13, 93 S.Ct. 1817, 1824 & n. 13, 36 L.Ed.2d 668, 677-78 & n. 13 (1973) for cases involving discriminatory refusal to hire).
Applying both the Burdine and the McDonnell Douglas criteria to the case at bar, we agree with the hearing officer’s initial determination that the applicant established a prima facie case of unlawful discrimination. Chandler, a black applicant for the promotion at issue, was by law a member of a protected class. He was, moreover, qualified for the position to which he applied in that he had satisfied the requirements advertised for the position of Inmate Classification Specialist II at Florida Correctional Institution (FCI): graduation from an accredited four-year college or university, with more than two years’ experience at the Correctional Officer I level. Finally, Kate Eldridge, a person who had similar qualifications but who was not a member of a racial minority, was promoted to the position that Chandler was denied.
After Chandler had established a prima facie case of intentional discrimination, the employer was required to rebut the presumption that arose therefrom. The employer gave as its reason for rejecting Chandler’s application the stronger qualifications of the person promoted to the position: Eldridge’s greater familiarity with the reception process at FCI. On its face, this appears to be a lawful, nondiscriminatory reason. In fact, the hearing officer *1187 found that DOC had “articulated legitimate, nondiscriminatory reasons for promoting the white applicant, rather than petitioner.” This finding is clearly supported by pertinent case law. “An employer’s decision may be justified by the hired employee’s superior qualifications unless the purported justification is a pretext for invidious discrimination.” Fernandez v. Wynn Oil Co., 653 F.2d 1273, 1276 (9th Cir.1981).[3]
A reason based upon a sound business practice — one that demonstrably bears a reasonable relationship to job performance — goes a long way in establishing a legitimate, nondiscriminatory reason. If, on the other hand, the employment practice which has the effect of excluding members of a protected class “cannot be shown to be related to job performance, the practice is prohibited.” Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 164 (1971).
We therefore agree that the hearing officer correctly followed the Burdine procedure by his allocation and resolution of the first two burdens. We also agree that the hearing officer correctly, after accepting the employer’s reason as legitimate, stated that the burden was thereafter on Chandler to establish by a preponderance of the evidence that DOC’s reasons for promoting Eldridge over Chandler were pretextual. Unfortunately, in his determination of the final part of the test, he appears to have misapplied the law to the facts before him.
In deciding that the reason given was pretextual, the hearing officer continually stressed the friendship between the chairperson of the selection committee and the person selected. In concluding that the promotion was based on friendship, the hearing officer stated that such motivation “was also discrimination against petitioner on account of race, color or national origin, because, as a highly qualified black candidate, he threatened the friend’s candidacy.” Additionally, the hearing officer wrote: “But excluding a public employee from consideration for promotion on account of his race violates Florida law, even if the principal motive is to advance a friend’s interest.” As we observed in our initial opinion, a racially discriminatory motive cannot, as a matter of law, be inferred from favoritism shown on the basis of friendship or some family relationship. See Platner v. Cash & Thomas Contractors, Inc., 908 F.2d 902, 905 (11th Cir.1990); Holder v. City of Raleigh, 867 F.2d 823, 825-26 (4th Cir.1989).
As was stated in Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir.1984), as applied in the context of employment decisions to discharge: “The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.” Moreover, as recognized in Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir.1979): “The employer’s stated legitimate reason ... does not have to be a reason that the judge or jurors would act on or approve.”
The usual rule applicable to a case such as this in which a plaintiff’s claim of discrimination has been fully tried pursuant to the Burdine procedure is that a reviewing court must proceed directly to the ultimate question in the case and decide “ ‘whether the defendant intentionally discriminated against the plaintiff.’ ” Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1129 (11th Cir.1984) (quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714-15, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403, 409-10 (1983)). See also Pullman-Standard v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, *1188 1789, 72 L.Ed.2d 66, 79-80 (1982); Moore v. Alabama State Univ., 864 F.2d 103, 105 (11th Cir.1989); Williams v. Southwestern Bell Tel. Co., 718 F.2d 715, 718 (5th Cir.1983). Under such circumstances, the relevant inquiry on review is to decide if the ultimate factual finding of discriminatory intent or lack thereof is clearly erroneous. See Carmichael, 738 F.2d at 1129. Consequently, if a finding of intentional discrimination is clearly erroneous, it must be reversed and the cause remanded to the fact finder to make findings under the correct legal standard “unless the record permits only one resolution of the factual issue.” Pullman-Standard, 456 U.S. at 292, 102 S.Ct. at 1792, 72 L.Ed.2d at 82.
Although we were initially of the view that the record before us permitted only one resolution of the ultimate factual issue — a determination that no unlawful discriminatory practice had occurred — we are now of the view that such conclusion is premature, and that the case should be remanded to the agency with directions that the critical findings in regard to discrimination vel non be clarified. In so saying we note that there appears to be an alternative reason in the recommended order for the hearing officer’s determination of a discriminatory intent: that the chairperson of the selection committee persuaded the other members of the committee not to recommend Chandler for the position because she knew that Chandler, as a highly qualified black applicant, might have been chosen due to the employer’s ongoing affirmative action program. We are aware that Title VII of the Civil Rights Act “proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation.” Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 164 (1971). We are also aware that unlawful discrimination claims must frequently be proven by indirect or circumstantial evidence.
In the case at bar there was evidence presented that for many years FCI was segregated and that a racially discriminatory climate had long existed there, resulting in the employment of only a few black persons, but that the DOC, in an effort to overcome this, had, beginning in the early 1970s, instituted affirmative action in recruiting and promoting minority employees. There was also evidence that claimant had previously been passed over for positions within the state prison system due to his outspokenness on behalf of an activist group of black employees. Moreover, Chandler was reprimanded for insubordination because he refused to respond to inquiries from the prison superintendent about his efforts on behalf of the group. Nevertheless, both the hearing officer and the agency specifically found that the members of the selection committee who nominated Eldridge were unaware of the reprimand when they decided not to recommend Chandler for promotion, and that no unlawful employment practice occurred as a result of the reprimand. Despite this particular finding, it is unclear from the hearing officer’s lengthy recitations relating to the employer’s prior discriminatory acts within the Florida prison system in general, and to Chandler’s having twice been passed over for promotion, whether any unlawful discriminatory motive played a part in the decision not to promote Chandler to the position at issue.
The evidence moreover supports the hearing officer’s tacit finding that the members of the selection committee manipulated the interview scoring process to the prejudice of Chandler’s application. Whether, however, the manipulation was motivated by a lawful or unlawful discriminatory purpose is unclear. Nevertheless the evidence clearly shows that out of a possible interview rating of one hundred, Eldridge received the highest score, ninety, and Chandler the second highest, eighty-nine; yet the selection committee recommended to the superintendent, who made the ultimate promotion decision, Ms. El-dridge, Mr. Dekle, a white person who scored third highest, and Mr. Cave, a black applicant who was rated fourth. There was also evidence that if the committee had followed proper rating procedures, Chandler may have received a higher score than that given him. For example, one of the categories considered under the Oral Inter *1189 view Appraisal Rating Chart was the individual applicant’s recommendation from his or her supervisor. In this category the selection team assigned five points to Ms. Eldridge, but no points to Mr. Chandler or to any other applicant. In fact, the team members neither requested a recommendation from Chandler’s supervisor nor attempted to contact him.
In approving the hearing officer’s recommended findings, the Commission concluded that “an unlawful employment practice did occur when the Department of Corrections skipped Mr. Chandler as the second-ranked candidate, resulting in the promotion of Ms. Eldridge.” We are therefore of the view, because of the rather confusing inferences of unlawful discrimination, that the hearing officer and the Commission should be given the opportunity on remand to decide, by carefully articulated findings and specific references to the record, whether an unlawful employment practice in fact occurred.
Consequently, following remand, Chandler retains the burden of persuasion to show, pursuant to the Burdine formula, that the reason given by the employer for promoting Eldridge was not the true reason. This burden then merges with Chandler’s ultimate burden of persuading the fact finder that he was the victim of intentional discrimination, and he may meet this burden “either directly by persuading the [lower tribunal] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer’s proffered explanation is unworthy of credence.” Burdine, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. As was recently explained by the United States Supreme Court in Patterson v. McLean Credit Union, 491 U.S. 164, 187, 109 S.Ct. 2863, 2378, 105 L.Ed.2d 132, 157 (1989), “The evidence which [the employee] can present in an attempt to establish that [the employer’s] stated reasons are pretextual may take a variety of forms.” It includes evidence that the rejected employee was in fact better qualified than the person selected or evidence of the employer’s past treatment of the employee. Id. at 187, 109 S.Ct. at 2378, 105 L.Ed.2d at 158. Indeed, the trier of fact may consider as well evidence previously submitted by the employee to establish a prima facie ease in determining whether the employer's explanation was pretextual. See Burdine, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10, 67 L.Ed.2d at 216 n. 10.
Thus, on remand the agency and the hearing officer shall determine the only remaining undecided factual issue: whether, in light of all the evidence previously submitted, or, at the option of the agency, upon presentation of additional evidence, the employee met his burden of showing by a preponderance of the evidence that DOC’s given reason for promoting Eldridge to the position Chandler sought was a pretext for a proscribed discriminatory practice.
REVERSED AND REMANDED for further consistent proceedings.
NIMMONS and ZEHMER, JJ., concur.

. This reason was instead first indicated in the hearing officer’s recommended order finding discrimination.

. Pertinent federal case law discloses two means by which a discriminatory employment claim may be tried. The first, as was apparently tried below, by showing disparate treatment, and the second, by showing discriminatory impact. *1186 When employing the former, a claimant must establish an employer's intentional discrimination; however, as to the latter, intentional discrimination is not required, and the claimant essentially challenges practices which are fair in form but discriminatory in operation. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 645-46, 109 S.Ct. 2115, 2119, 104 L.Ed.2d 733, 744 (1989).

. In Fernandez, the Ninth Circuit indicated that even if the plaintiff had established a prima facie case of discrimination, the trial court was justified in finding that the employer had established a legitimate, nondiscriminatory purpose in its decision to promote a member of a non-protected class, because the person selected had greater experience than the plaintiff. The evidence showed that the chosen person had a prior management record with the employer in international and domestic markets; he had implemented a highly successful merchandising program in the employer's industrial division, and had demonstrated skills in management, delegation of work, supervision, and public speaking, all of which were considered necessary or highly desirable for the position sought. Fernandez, 653 F.2d at 1276.