REINHARDT, Circuit Judge,
concurring in part and dissenting in part:
I join parts II, III, and IV of the majority disposition. I dissent from part I, however, because a rational trier of fact could find that UPS’s “proffered explanation” for Smith’s non-reinstatement “is ‘unworthy of credence,’ ” and that, in light of the company’s history of reinstating non-black employees charged with the same infraction as Smith and the harassment he experienced, the primary reason Smith was not reinstated was his race. Chuang v. Univ. of Cal. Davis Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir.2000).
In three incidents prior to Smith’s confrontation with his co-worker, Lemos, the joint UPS-union panel did not reinstate one other black employee, but did reinstate two white employees and two Asian employees who had fought on duty. UPS argues that the cases in which the non-black employees were reinstated were different from Smith’s because the employees involved had reconciled prior to the panel hearing, whereas Smith and Lemos had not reconciled. Consequently, UPS suggests, Smith was differently situated and thus could not have been differently treated because of his race. There are two problems with that argument. First, “[wjhether two employees are similarly situated is ordinarily a question of fact.” Beck v. UFCW, Local 99, 506 F.3d 874, 885 n. 5 (9th Cir.2007). Whether the non-black employees’ reconciliation was actually the dispositive factor in their cases, or whether those employees were not viewed any differently than Smith — apart from their race — is a genuine issue of material fact for a jury to decide. It is not enough to say, as the district court found, that “it was reasonable for the panel to conclude that, given the lack of reconciliation, it could not reinstate both Lemos and [Smith]” the question is whether any rational factfinder could have disbelieved this basis for distinguishing the other cases. As that determination rests largely on assessing the credibility of UPS personnel, a rational jury could certainly find for Smith on the question of disparate treatment. Summary judgment was improper under these circumstances.
Second, even if UPS did maintain a genuine and consistent policy of not reinstating an employee who (1) had instigated a fight with a colleague and (2) had not reconciled with that colleague, that would not end the inquiry. It would matter why the employees did not reconcile. If the colleague refused to reconcile because of the degree of harm he suffered or the sincere fear he continued to feel regarding the aggressor-employee, it might be sensible for an employer to deny reinstatement *629 as a result. If the colleague refused to reconcile because of his own racial prejudice, however, the company could not deny reinstatement on that basis, because the employer would, in essence, be adopting the colleague’s discriminatory attitude as its own. “It is now widely accepted that a company’s desire to cater to the perceived racial preferences of its customers is not a defense under Title VII for treating employees differently based on race.” Chaney v. Plainfield Healthcare Ctr., 612 F.3d 908 (7th Cir.2010). A co-worker’s racial preference is no different. Cf. 29 C.F.R. § 1604.2(a)(2) (“The [Equal Employment Opportunity] Commission will find that the following situations do not warrant the application of the bona fide occupational qualification exception [to the ban on sex discrimination]: ... (iii) The refusal to hire an individual because of the preferences of coworkers, the employer, clients or customers....”) (emphasis added). A company cannot refuse to reinstate an employee who does not get along with coworkers when the reason he does not get along is his race.
UPS does not dispute that Lemos refused to reconcile because his primary goal was to ensure that Smith not be reinstated. That fact alone raises suspicions about Lemos’s motives. There is additional evidence in the record that would allow a rational finder of fact to conclude that Lemos’s animus toward Smith did, in fact, derive from Smith’s race: Lemos was a leader of the “Mexican Mafia,” a group of Hispanic employees that harassed other employees who were not part of the group; Smith was among those targeted and thought he was singled out for being black, or at least because he was not Hispanic. If racial bias did motivate Lemos not to reconcile, then the company’s decision not to reinstate Smith was impermissibly infected by racial discrimination. A jury could rea-
sonably conclude that Lemos refused to resolve his dispute with Smith because of his race, and so UPS’s decision not to reinstate Smith because of the ongoing conflict was in fact nothing more than unlawful “bootstrap [ping]” of Lemos’s racial preferences into a purportedly legitimate business decision. See Fernandez v. Wynn Oil Co., 653 F.2d 1273, 1276 (9th Cir.1981). This question should have gone to a jury as well.
Finally, a rational trier of fact familiar with the Teamsters union could find “unworthy of credence” the suggestion that the panel, on which three Teamsters sat, was legitimately so concerned about a shoving match that it upheld the termination of a 20-year employee for his first disciplinary offense. Termination is an extremely harsh result in an employee-discipline grievance process, and a seemingly unlikely one for Teamsters to endorse for an incident as relatively minor as this one. The panel’s motives could reasonably be doubted further by the fact that it apparently did not ask Lemos to explain whether or why he was unwilling to reconcile with Smith — an inquiry it surely would have undertaken if reconciliation between employees were so critical a matter. A jury could reasonably conclude that something other than the details of Smith’s confrontation and relationship with Le-mos — such as race discrimination — underlay the decision not to reinstate him.
For these reasons, I would reverse the district court’s grant of summary judgment to UPS on Smith’s race discrimination claim. I respectfully dissent.