382 S.E.2d 75

**CHICO DAIRY COMPANY, STORE NO. 22**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Terrah Elynn Alfred.**

**No. 18317.**

Supreme Court of Appeals of West Virginia.

June 27, 1989.

Charles G. Brown, Atty. Gen., Charleston, Barbara E. Fleischauer, Sp. Asst. Atty. Gen., Morgantown, for appellants.

Jackson & Kelly, Charleston, for Chico Dairy Co.

McHUGH, Justice:

This appeal is by the West Virginia Human Rights Commission and by a complainant before that body, both of whom assert here a violation of the West Virginia Human Rights Act, *W. Va. Code*, 5–11–1 to –19, as amended. Presented for our review is a final order of the Circuit Court of Kanawha County, West Virginia. The circuit court, upon an appeal by the complainant's former employer, reversed a decision of the West Virginia Human Rights Commission in favor of the complainant. We conclude that the circuit court correctly applied the statute to the claim that there had been an unlawful discrimination in this case based upon an alleged "handicap." Accordingly, we affirm the circuit court's ruling that there was, as a matter of law, no violation of the Act as alleged in this case. We reverse the circuit court's ruling that a remand to the West Virginia Human Rights Commission is appropriate in this case to allow for investigation and conciliation of the handicap issue.

## I.

### A. The Facts

The complainant, Ms. Terrah Elynn Alfred, had been employed, as an assistant manager, by Chico Dairy Company (the "employer") at its Chico Dairy Mart Store No. 22 in Fairmont, West Virginia. The complainant is blind in her left eye. That eye was removed when she was an infant to abate cancer. She wears a prosthesis, or artificial, replacement eye. The socket around that eye is somewhat sunken or hollow.

As the assistant manager of a Chico Dairy Mart the complainant's duties included opening the store, getting the cash registers ready, preparing deposits, keeping track of inventory, ordering goods from vendors and dealing with customers and the vendors. The manager of a Chico Dairy Mart store performs essentially the same duties as the assistant manager and also has the final responsibility for running the affairs of the store, including supervising, hiring and firing subordinate personnel.

On each of two separate occasions, the first time in July, 1980 and the second time on July 24, 1981, a male, part-time clerk with a Chico Dairy Mart who had less experience than the complainant was promoted to store manager at her store, instead of the complainant. The complainant was at least as well qualified as the first of these men and undoubtedly better qualified than the second for the promotion to store manager.

The employer employed many women as managers of its various stores. One of these female store managers, a Ms. Vandergrift, who had previously been the store manager at the complainant's store, testified that the employer's area supervisor, who is responsible for selecting store managers, told Ms. Vandergrift, in August, 1980, that the complainant would not be his choice for a store manager's position because of the complainant's noticeable "fa-

cial deformity." According to Ms. Vandergrift, he also stated that it would not be wise to promote the complainant to the position of store manager, strictly on the basis of her physical *appearance*, because, in his opinion, the complainant's "facial deformity" was not something a vendor or customer "would like to encounter."[1]

After being "passed over" the second time for a promotion to the position of store manager, the complainant was so upset that she, on July 25, 1981, submitted her resignation from employment. Her resignation was effective on August 1, 1981.

## B. Proceedings before the Commission

The complainant thereafter timely filed a complaint against the employer with the West Virginia Human Rights Commission (the "Commission"), alleging that her resignation was a constructive discharge based upon unlawful discrimination on account of her sex. Much later, but as soon as she learned from Ms. Vandergrift about the area supervisor's statements concerning his opinion of the complainant's physical appearance, the complainant amended her complaint to add an allegation of unlawful discrimination against her by the employer on account of her alleged "handicap," expressly referring to the manner in which the employer *regarded* her physical appearance, not to her blindness in one eye. In her amended complaint the complainant stated that she was able to perform the job, and she did *not* mention any actual handicap for which the employer should have made reasonable accommodations.

After an evidentiary hearing, a hearing examiner for the Commission found that there had been no unlawful discrimination by the employer against the complainant on account of her sex. On the other hand, the hearing examiner found that there had been an unlawful discrimination by the employer against the complainant on account of her "handicap." The "handicap" was, not her blindness in one eye, but the perception of the employer's area supervisor that the complainant's "facial deformity" was "unsavory and unacceptable" for a store manager who dealt with vendors and customers. It was this perception which was the reason that the complainant was not promoted to the position of store manager. The hearing examiner expressly found that the complainant's "facial deformity" in no way affected her ability to perform the duties of a store manager in a satisfactory manner.

Having found an employment-related discrimination on account of what he believed was a "handicap," the hearing examiner concluded that the employer had violated the West Virginia Human Rights Act.[2] Ac-

---

**1.** The employer's area supervisor denied making these statements, but the hearing examiner found that he did make them. The credibility of the witnesses was for the hearing examiner to determine, and the hearing examiner's finding of fact on this point was supported by substantial evidence on the whole record. *See, e.g.,* syl. pt. 1, *Frank's Shoe Store v. West Virginia Human Rights Commission,* 179 W.Va. 53, 365 S.E.2d 251 (1986); syl. pt. 3, *State ex rel. State Human Rights Commission v. Logan–Mingo Area Mental Health Agency, Inc.,* 174 W.Va. 711, 329 S.E.2d 77 (1985); syl. pt. 2, *Shepherdstown Volunteer Fire Depart. v. State ex rel. State Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983).

Our holding in this particular case turns upon the *legislative* decision to restrict the protection against discrimination on the basis of a "handicap" to those cases in which the discrimination was on the basis of an actual, existing, physical or mental impairment. Where the discrimination was alleged and shown to be solely upon the employer's perception that the complain-

ant's physical appearance was "unacceptable," the employer's conduct is not actionable under the West Virginia Human Rights Act because of the statutory definition of "handicap," not because of the employer's so-called "customer preference" defense. By this opinion we do not approve of such a defense to actionable conduct.

**2.** *W.Va.Code,* 5–11–9 [1981] provides, in relevant part, as follows:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, ...

(a) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or handicapped[.]

*W.Va.Code,* 5–11–3(h), as amended, defines the terms "discriminate" or "discrimination" to mean "to exclude from, or fail or refuse to

cordingly, he awarded back pay and compensatory emotional damages (the latter in the amount of $1,000.00) and ordered the employer to rehire the complainant, with the additional requirement of placing her in the next available store manager's position after some "refresher" training.

The Commission subsequently adopted the hearing examiner's findings of fact and conclusions of law, except that the Commission ordered a recalculation of the amount of back pay. The parties later stipulated that the amount of back pay would be $49,223.70, if the conclusion that a violation had occurred was ultimately upheld.

### C. Review by the Circuit Court

Upon appeal by the employer the Circuit Court of Kanawha County reversed and remanded. It held, *inter alia,* that the Commission's finding of discrimination on account of a "handicap" was erroneous as a matter of law because the statute, *W. Va. Code,* 5–11–3(t) [1981], requires an actual, not merely a perceived, physical or mental impairment.[3] The circuit court, concerned with procedural fairness to the employer, remanded the case for investigation and attempts at conciliation with respect to the statutorily defined "handicap" issue, for neither of those prehearing procedures had occurred on that issue; instead, the *"perceived* handicap" issue, due to the timing of the addition of that issue, was administratively handled initially at the evidentiary hearing.

The Commission and the complainant then prosecuted this appeal.

### II.

### A. The Commission's Rule on Perceived Handicaps

According to *W. Va. Code,* 5–11–2 [1981], "[i]t is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment, ...

Equal opportunity in the area [ ] of employment ... is hereby declared to be a human right or civil right of all persons without regard to ... blindness or handicap." Nonetheless, *W. Va. Code,* 5–11–3(i), as amended, provides that "[t]he term 'unlawful discriminatory practices' includes *only* those practices specified in section nine of this article[,]" referring to *W. Va. Code,* 5–11–9 [1981], *see supra* note 2 (emphasis added above to section 3(i)). The applicability of *W. Va. Code,* 5–11–9 [1981] with respect to a person with a "handicap" depends, in part, upon the definition of "handicap," *see supra* note 3.

Effective formally on August 1, 1982, the Commission promulgated so-called "interpretive rules" on discrimination against the handicapped. 6 *W. Va. Code of State Rules* §§ 77–1–1 to 77–1–7. Under § 77–1–2.1 of these rules the definition of "handicap" is exactly the same as the statutory definition, *see supra* note 3. In addition, however, another section, namely, § 77–1–2.7, of the Commission's rules defines a "handicapped person" as one who: "(a) Has a handicap as defined above; (b) has a record of such handicap; or (c) is *regarded as* having such a handicap." (emphasis added) Footnote number 8 to the rules (published therewith) states in pertinent part:

Like the definition of 'Handicap,' this definition of 'Handicapped Person' is based upon the definition of 'Handicapped Person' in The Rehabilitation Act of 1973, 29 U.S.C. § 706(7).

. . . .

This regulation follows the federal [statutory] definition and *expands upon the [West Virginia] statutory definition* of 'Handicap' by including persons who are regarded as having a substantially limiting impairment and persons with a history of such impairment. This *extension* is necessary to make it clear that the law prohibits discrimination against

---

extend to, a person equal opportunities because of ... blindness or handicap[.]"

**3.** The statutory definition of "handicap," added on July 6, 1981, is set forth in *W. Va. Code,* 5–11–3(t): "The term 'handicap' means any physical or mental impairment which substantially lim-

its one or more of an individual's major life activities." *See infra* note 10.

The 1987 amendment to one of the other subdivisions of *W. Va. Code,* 5–11–3 is not relevant to this case.

persons who are incorrectly perceived as handicapped as well as persons who are correctly perceived as handicapped.

....

... [D]iscrimination against persons who are regarded as being substantially impaired even though they are not actually impaired is discrimination rooted in prejudices or mistaken ideas about the capacities of persons who are not physically or mentally normal.... Examples of discrimination against persons who are regarded as being substantially impaired include ... denial of employment to a person with a florid face on the mistaken assumption he or she has high blood pressure.

(emphasis added) [4]

The Commission views § 77–1–2.7 of its rules on discrimination against the handicapped as a reasonable "interpretive" rule which "relates back" to July 6, 1981, when the handicap provisions of the West Virginia Human Rights Act (the "Act") became effective. This Court disagrees because this rule is a "legislative rule" and as such is invalid, not having been properly promulgated in accordance with statutory requirements. Moreover, this rule is invalid because it clearly enlarges the statutory definition of "handicap," contrary to the obvious legislative intent.

### B. Invalidity of Rule Under State Administrative Procedures Act

██ W. Va. Code, 5–11–8(h) [1981] requires the Commission's rules and regulations to be promulgated "in accordance with" W. Va. Code, 29A–3–1 to 29A–3–17, as amended, the rule-making article of the State Administrative Procedures Act. For our purposes here, the significance of that rule-making article is that it requires a state administrative agency to submit "legislative rules" to the legislative rule-making review committee for the committee's and the full legislature's approval thereof, in order for such rules to be effective.[5]

---

**4.** While the hearing examiner's and the Commission's written decisions in the present case do not expressly refer to these rules, we note the following language from the hearing examiner's (also the Commission's) decision, which is very similar to the language used in footnote number 8 to the rules, quoted immediately above: "Appearance was not a bona fide occupational qualification as relates to this position, but was subject to the *mistaken beliefs and prejudices* of Respondent." (emphasis added) In any event, it is *clear* that the hearing examiner and the Commission did *not* use the *statutory* definition of "handicap," and the Commission defends before us § 77–1–2.7 of the rules as supportive of the Commission's decision in favor of the complainant, whose amended complaint alleged a violation of the West Virginia Human Rights Act on the basis of the employer's *perception* of a "facial deformity," not on the basis of blindness or an actual handicap.

**5.** Several sections of the State Administrative Procedures Act, as amended effective May 11, 1982, state the legislature's concerns with the manner in which the rules of state administrative agencies are promulgated, emphasizing legislative oversight of rules which are legislative in character. W. Va. Code, 29A–1–1 [1982] sets forth the legislative findings and purpose:

The Legislature finds and declares that administrative law and the administrative practice and procedure of the various executive and administrative officers, offices and agencies comprise[ ] a body of law and policy which is voluminous, often formulated without adequate public participation and collected and preserved for public knowledge and use in an unacceptable and essentially inaccessible fashion. The Legislature further finds that the delegation of its legislative powers to other departments and agencies of government requires of the Legislature that the rules and regulations of such other departments and agencies, which have the force and effect of law because of their legislative character, should be carefully and extensively reviewed by the Legislature in a manner properly respectful of the separation of powers [*see State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622 (1981),] but in keeping with the legislative force and effect of such rules and regulations. Accordingly the Legislature has and by this chapter intends to fix by law uniform and settled administrative practices and procedures, subject only to enumerated exceptions, for the exercise of executive rule-making authority and for the exercise by executive and administrative officers, offices and agencies of lawfully delegated legislative power, with appropriate legislative review of that exercise of such a delegated legislative authority and with established procedures for legislative oversight of the exercise of executive rule-making authority.

W. Va. Code, 29A–3–1 and 29A–3–2 [1982] state, respectively, that administrative rules are to be promulgated only in accordance with the article on rule making and that an administrative agency has the power to promulgate "legislative

In defining terms, the State Administrative Procedures Act notes that "[e]very [administrative] rule shall be classified as 'legislative rule,' 'interpretive rule' or 'procedural rule,' all as defined in this section, and shall be effective only as provided in this chapter[.]" *W. Va. Code*, 29A-1-2(i) [1982]. An "interpretive rule" is one

which is not intended by the agency to be determinative of any issue affecting private rights, privileges or interests. An interpretive rule may not be relied upon to impose a civil or criminal sanction nor to regulate private conduct or the exercise of private rights or privileges nor to confer any right or privilege [not] provided by law and is not admissible in any administrative or judicial proceeding for such purpose, . . . However, an interpretive rule is admissible for the purpose of showing that the prior conduct of a person was based on good faith reliance on such rule.

*W. Va. Code*, 29A-1-2(c) [1982]. In contrast, *W. Va. Code*, 29A-1-2(d) [1982] defines a "legislative rule" to include a

rule which, when promulgated after or pursuant to authorization of the legislature, has (1) the force of law, or (2) supplies a basis for the imposition of civil

or criminal liability, or (3) grants or denies a specific benefit. Every rule which, when effective, is determinative on any issue affecting private rights, privileges or interests is a legislative rule. Unless lawfully promulgated as an emergency rule, a legislative rule is only a proposal by the agency and has no legal force or effect until promulgated by specific authorization of the legislature.

In the present case the Commission's rule § 77-1-2.7 is a "legislative rule," not an "interpretive rule." It expressly extends the statutory definition of "handicap" so as to form a basis for the imposition of civil sanctions under the Act, as was done in this case; the rule confers a right not provided by law; and the rule affects private rights and purports to regulate private conduct.

This "legislative rule" was not, however, submitted to, reviewed by and approved by the legislative rule-making review committee and the legislature, as required by *W. Va. Code*, 29A-3-9 to 29A-3-14, as amended. It is, therefore, of no effect under the State Administrative Procedures Act.[6]

rules" only when there is compliance with the rule-making article of the State Administrative Procedures Act. *W. Va. Code*, 29A-3-1 [1982] reads:

In addition to other rule-making requirements imposed by law and except to the extent specifically exempted by the provisions of this chapter or other applicable law, every rule and regulation (including any amendment of or rule to repeal any other rule) shall be promulgated by an agency only in accordance with this article and shall be and remain effective only to the extent that it has been or is promulgated in accordance with this article.

The 1988 amendment to *W. Va. Code*, 29A-3-1 is not applicable to this case. *W. Va. Code*, 29A-3-2 [1982] states in pertinent part:

(a) Except when, and to the extent, that this chapter or any other provision of law now or hereafter made expressly exempts an agency, or a particular grant of the rule-making power, from the provisions of this article, every grant of rule-making authority to an executive or administrative officer, office or agency, heretofore provided, shall be construed and applied to be effective only:

. . . .

(2) If exercised in accordance with the provisions hereof.

(b) No executive or administrative agency shall be deemed to have power and authority to promulgate a legislative rule without compliance with this article unless: (1) the provision of this code, heretofore or hereafter enacted, granting such power and authority, expressly exempts its exercise from legislative rule-making review prior to promulgation or (2) the grant of such power and authority is exempted from the application of this chapter by the express provisions of this chapter.

The constitutionality of the current rule-making article of the State Administrative Procedures Act under the separation of powers doctrine has not been challenged in this case, and we therefore express no opinion on the same.

**6.** The language of *W. Va. Code*, 29A-3-9 [1982, 1986] is as follows:

When an agency proposes a legislative rule, other than an emergency rule, it shall be deemed to be applying to the Legislature for permission, to be granted by law, to promulgate such rule as approved by the agency for submission to the Legislature or as amended and authorized by the Legislature by law.

In contrast to the lack of legislative review of the state administrative rules here, the Supreme Court of the United States has observed that the federal administrative regulations implementing the Federal Rehabilitation Act of 1973,[7] including the regulations implementing the tripartite definition of a "handicapped individual," set forth in § 706(7)(B), *see infra* note 8, "were drafted with the oversight and approval of Congress[.]" *School Board v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307, 316 (1987).

This Court holds that the rule of the West Virginia Human Rights Commission, 6 *W.Va.Code of State Rules* § 77–1–2.7 (1982), defining a "handicapped person," for purposes of the West Virginia Human Rights Act, to include a person who does not in fact have a "handicap," as defined by *W.Va.Code*, 5–11–3(t), as amended, but

An agency proposing a legislative rule, other than an emergency rule, shall first file in the state register a notice of its proposal, including the text of the legislative rule and including all materials required in the case of a procedural or interpretive rule. The agency shall then proceed as in the case of a procedural and interpretive rule to the point of, but not including, final adoption. In lieu of final adoption, the agency shall approve the rule, including any amendments, for submission to the Legislature and file such notice of approval in the state register and with the legislative rule-making review committee.

Such approval of the rule by the agency for submission to the Legislature shall be deemed to be approval for submission to the Legislature only and *not deemed to give full force and effect until authority to do so is granted by law.*

(emphasis added)

*W.Va.Code*, 29A–3–11(b) [1982, 1986] details the duties of the legislative rule-making review committee. Under that section, and succeeding sections, it is that committee, and the full legislature, rather than the administrative agency, which determines, *inter alia*, whether to "extend" the statute and whether the proposed legislative rule is "reasonable" or "necessary."

We also note that the silence or inaction of the legislature with respect to a proposed legislative rule is not to be deemed an approval thereof but, instead, a disapproval thereof, by virtue of *W.Va.Code*, 29A–3–12(b) [1982, 1986]:

(b) If the Legislature fails during its regular session *to act upon all or part of any* legislative rule which was submitted to it by the legislative rule-making review committee during such session, no agency may thereafter issue any rule or directive or take other action

who "is regarded as having such a handicap," is invalid. That rule is a "legislative rule" under *W.Va.Code*, 29A–1–2(d), as amended, but was not submitted to the legislative rule-making review committee for its approval, as required by *W.Va.Code*, 29A–3–9 to 29A–3–14, as amended.

## C. Invalidity of Rule Under Case Law

■ Those cases from other states holding discrimination based upon the mere *perception* of a handicap to be actionable under the state human rights law (or a similar law) fall into either of two categories, both of which are materially distinguishable from this case. The first category involves a state *statute* which *tracks* the federal statute.[8] *See, e.g., Kenall Manufacturing Co. v. Human Rights Commission*, 152 Ill.App.3d 695, 702–03, 105 Ill.

to implement such rule or part thereof unless and until otherwise authorized to do so.

Finally, *this Court notes that this case is to be* distinguished from *West Virginia Board of Education v. Hechler*, 180 W.Va. 451, 376 S.E.2d 839 (1988). In that case the administrative agency, the State Board of Education, was expressly granted general supervisory powers over state educational matters by the State *Constitution,* and we invalidated legislative provisions which interfered with the Board's exercise of the general supervisory powers. Here, in contrast, the administrative agency, the West Virginia Human Rights Commission, derived its rule-making powers from a *statute,* specifically, *W.Va. Code,* 5–11–8(h) [1981], and not from the State *Constitution.*

7. The Federal Rehabilitation Act of 1973 is codified as 29 *U.S.C.* §§ 701–796i (1982 and Supp. IV 1986).

8. The federal statute, 29 *U.S.C.* § 706(7)(B), enacted in 1974, defines a "handicapped individual" to mean any person who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is *regarded as* having such an impairment." (emphasis added)

29 *U.S.C.* § 706(7)(B) was redesignated as 29 *U.S.C.* § 706(8)(B) in 1986, and this federal statute now uses the term "individual with handicaps," instead of "handicapped individual."

For general discussions of the federal statute and cases on the definition of handicapped persons, see M. Player, *Employment Discrimination Law* § 7.09 (1988); L. Rothstein, *Rights of Physically Handicapped Persons* § 4.03 (1984 and Supp.1988).

Dec. 520, 524–25, 504 N.E.2d 805, 809–10, *petition for leave to appeal denied,* 115 Ill.2d 542, 110 Ill.Dec. 457, 511 N.E.2d 429 (1987); *City of La Crosse Police & Fire Commission v. Labor & Industry Review Commission,* 139 Wis.2d 740, 755–65, 407 N.W.2d 510, 516–20 (1987) (analyzing five prior Wisconsin cases falling into the second category below).[9]

A second category of cases from other states involves a state statute which, unlike in West Virginia, does not define "handicap." In these cases there was either: (1) a state's administrative regulation identical or very similar to the federal statute's tripartite definition of a "handicapped individual," and the regulation, unlike here, was properly promulgated as within the state administrative agency's broadly delegated power to promulgate rules and regulations having the force and effect of law *without* legislative review and approval; or (2) an administrative decision or judicial opinion supplying the definition of "handicap" not provided by the legislature. *See, e.g., Kelley v. Bechtel Power Corp.,* 633 F.Supp. 927, 932–33 (S.D.Fla.1986) (applying Florida administrative decisions); *Commonwealth, Pennsylvania State Police v. Commonwealth, Pennsylvania Human Relations Commission,* 72 Pa.Cmwlth. 520, 523 n. 2, 526–30, 457 A.2d 584, 586 n. 2, 588–89 (1983) (applying valid administrative regulation); *Barnes v. Washington Natural Gas Co.,* 22 Wash.App. 576, 591 P.2d 461 *passim* (1979) (applying valid administrative regulation). In the *Pennsylvania State Police* case, the court made this remark, which also applies here: "When the Commission adopted its regulations defining those key words [not defined, in that case,] in the statute [including, "handicapped or disabled person"], they were [it was] engaged in legislative, not interpretative, rule-making." 72 Pa.Cmwlth. at 528, 457 A.2d at 589.

A case from another state which is virtually identical to the case now before us is *Kirby v. Illinois Cent. G.R.R.,* 117 Ill. App.3d 1070, 73 Ill.Dec. 719, 454 N.E.2d 816 (1983). The complaint there was under the Illinois Equal Opportunities for the Handicapped Act (the "EOHA"), then in effect. The complainant in that case alleged an unlawful refusal to hire him on the basis that the potential employer "perceived" that the complainant had spina bifida, a back condition. The complaint did not allege any existing back condition which was a handicap, and, instead, alleged the complainant's ability to perform the work in question. The statute prohibited unlawful employment discrimination because of an individual's physical or mental handicap, defined by the statute, in relevant part, as " 'a handicap unrelated to one's ability to perform jobs or positions available to him for hire or promotion[.]' " 117 Ill.App.3d at 1071, 73 Ill.Dec. at 721, 454 N.E.2d at 818.

The court in *Kirby* examined prior cases under the statute and held: "Plaintiff's theory that only the perception of a handicap need be alleged was previously rejected by" state precedents. "The EOHA does not provide a remedy to persons who are not in fact handicapped. The complaint under consideration did not state a cause of action under the Act." *Id.* at 1074, 73 Ill.Dec. at 722, 454 N.E.2d at 819. Restating its holding, the court said: "We hold that pleading the existence of a handicap is a threshold requirement for stating a cause of action under the EOHA. Secondly, it is necessary to allege that the complained-of discriminatory employment practice occurred because of the perception of the handicap." *Id.*

**9.** *See also Rogers v. Campbell Foundry, Co.,* 185 N.J.Super. 109, 112–13, 447 A.2d 589, 591 (App. Div.) (perception of a handicap implicitly covered by statute; statute, *N.J.Stat.Ann.* § 10:5–4.1 (West Supp.1988) prohibits unlawful discrimination against a person based upon the fact that "such person is or has been at any time handicapped," and another statute, *N.J.Stat.Ann.* § 10:5–2.1 (West Supp.1988) allows employment-related decisions against "any person who in the *opinion* of the employer, *reasonably arrived at,* is unable to perform adequately the duties of employment") (emphasis added), *petition for certification denied,* 91 N.J. 529, 453 A.2d 852 (1982).

*See generally* Note, *Facial Discrimination: Extending Handicap Law to Employment Discrimination on the Basis of Physical Appearance,* 100 Harv.L.Rev. 2035 (1987).

The complainant here likewise failed to allege and prove unlawful discrimination on account of an actual, existing "handicap," defined by *W. Va. Code,* 5–11–3(t), as amended, as "any physical or mental impairment which substantially limits one or more of an individual's major life activities." The complaint was not premised upon the fact that the complainant was blind in one eye but upon the fact that the socket around that eye was somewhat sunken or hollow and was *regarded* by the employer as "unsavory and unacceptable" for a store manager who dealt with vendors and customers. In short, the complaint in the present case, as in *Kirby,* alleges the unimpaired ability to do the work in question, as well as work in general, without any accommodations and was based upon the mere perception of a handicap by the employer, which is not actionable under the Act as written.

### D. Invalidity of Rule Under West Virginia Human Rights Act

The definition of "handicap" under the West Virginia Human Rights Act, *see supra* note 3, is more restrictive than the federal definition of "handicapped individual," *see supra* note 8. The West Virginia statute requires an actual, existing handicap. In obvious contrast, the federal statute, and the Commission's rule taken verbatim therefrom, include—in addition to an actual, existing handicap—a past handicap and a perceived handicap. The West Virginia statute was enacted in 1981, after the tripartite definition was added to the federal statute in 1974. Nevertheless, the West Virginia statute does not use the federal definition. Accordingly, the Commission's rule which makes discrimination based upon past or perceived handicaps to be actionable under the Act conflicts with the clear legislative intent.

This Court very recently decided another case involving the handicap provisions of the Act. In *Ranger Fuel Corp. v. West Virginia Human Rights Commission,* 180 W.Va. 260, 376 S.E.2d 154 (1988), the complainant had psoriatic lesions on her lower extremities which prevented her employment as a general underground miner in low coal, the job in question, but which did not substantially limit her major life activities. She did not, therefore, have a "handicap" under the definition set forth in *W. Va. Code,* 5–11–3(t), as amended. She was also not entitled to any relief under the rules of the Commission because those rules allow an employer to refuse to hire a "handicapped person" when, as in that case, a person's handicap creates a reasonable probability of a materially enhanced risk of substantial harm to the handicapped person or to others.

██ In light of the fact in *Ranger Fuel* that the Commission's rules on discrimination against handicapped persons supported a ruling favorable to the employer therein, we expressly did not decide the issue of whether the definition of a "handicapped person" contained in those rules was too broad. We did conclude, however, in syllabus point 4 of *Ranger Fuel* that:

> Rules and Regulations of the West Virginia Human Rights Commission must faithfully reflect the intention of the legislature; when there is clear and unambiguous language in a statute, that language must be given the same clear and unambiguous force and effect in the Commission's Rules and Regulations that it has in the statute.

██ This Court now decides the issue left open in *Ranger Fuel* and holds that the rule of the West Virginia Human Rights Commission, 6 *W. Va. Code of State Rules* § 77–1–2.7 (1982), defining a "handicapped person" to include a person who does not in fact have a "handicap," as defined by *W. Va. Code,* 5–11–3(t), as amended, but who "is regarded as having such a handicap," is invalid because that rule clearly conflicts with the *legislative* intent by expressly enlarging upon the substantive rights created by the statute. It is an unlawful discriminatory practice under the West Virginia Human Rights Act for an employer to refuse to offer a job promotion to an employee on account of the person's "handicap," as defined by *W. Va. Code,* 5–11–3(t), as amended. However, where a complainant never alleges, and the

evidence does not indicate, that the discrimination was on account of the complainant's "handicap," as statutorily defined, but solely because the employer regarded the complainant's physical appearance to be unacceptable, the conduct of the employer is not actionable under the clearly restrictive definition of "handicap" contained in the West Virginia Human Rights Act.

Our holding in this case is consistent with syllabus point 4 of *State ex rel. Callaghan v. W. Va. Civil Service Commission,* 166 W.Va. 117, 273 S.E.2d 72 (1980): "Procedures and rules properly promulgated by an administrative agency with authority to enforce a law will be upheld so long as they are reasonable and do not enlarge, amend or repeal substantive rights created by statute." [10]

### III.

■ To protect the employer's procedural rights, the circuit court ordered this case to be remanded to the Commission so that there could be an investigation and attempts at conciliation of the statutorily defined "handicap" issue, in light of the fact that neither of those prehearing procedures had occurred on that issue. There never was, however, a claim in this case of discrimination on account of an actual, existing handicap. It would, therefore, be inappropriate to remand this case to the Commission for development of a cause of action which the complainant never pursued. *Cf. McJunkin Corp. v. West Virginia Human Rights Commission,* 179 W.Va. 417, 423, 369 S.E.2d 720, 726 (1988) (not proper

to hold employer guilty of an unlawful discriminatory act which had never been complained of by complainant). Accordingly, we reverse this ruling of the circuit court.

### IV.

Based upon all of the above, we affirm the circuit court's ruling that there was, as a matter of law, no violation of the Act as alleged in this case. On the other hand, we reverse the circuit court's ruling that there should be a remand to the Commission in this case.

Affirmed in part; Reversed in part.

McGRAW, J., participated and concurred in the original decision of this case. After Justice McGraw's departure from the Court, a petition for rehearing was filed. Upon petition for rehearing, the Court's original opinion was modified and the petition for rehearing was denied by a majority of the Court; Justice McGraw took no part in the consideration or decision on rehearing.

WORKMAN, J., participated in the opinion as modified, dissenting, in part, and would have granted a rehearing.

WORKMAN, Justice, dissenting:

The opinion of the majority is not only unconscionable, but wrong as a matter of law.

This is a simple case and the result should be clear: Terrah Elynn Alfred is blind in her left eye and therefore clearly handicapped as that term is defined by the

---

**10.** Our holding in this case is narrow and is compelled by two factors: (1) the complainant did not allege discrimination on account of her blindness in one eye, but, instead, solely on account of her employer's perception of her physical appearance and (2) at the time in controversy the legislature had decided not to protect against the mere perception of a handicap; we do not, of course, address the wisdom of the legislature's decision in this regard. This Court is aware of the "prejudices or mistaken ideas about the capacities of persons who are not physically or mentally normal." *See supra* text accompanying note 4. By this opinion we do not countenance any proved unlawful discriminatory practice against a person on account of a "handicap," as statutorily defined.

With respect to legislative intent, this Court notes that the legislature, in its session just completed, amended *W.Va.Code,* 5–11–3(t), so that the definition of "handicap" is now identical to the tripartite federal definition of an "individual with handicaps," including a person who "(3) Is regarded as having such an impairment." Enrolled Conference Committee Substitute for House Bill 2516, passed on April 8, 1989, signed by the governor on April 26, 1989, effective July 1, 1989; 1989 *W.Va.Acts* ch. 92. An amendment is meant to change the law. *Western Maryland Ry. v. Goodwin,* 167 W.Va. 804, 816, 282 S.E.2d 240, 248 (1981) (and cases cited therein), *appeal dismissed for want of a substantial federal question,* 456 U.S. 952, 102 S.Ct. 2025, 72 L.Ed.2d 477 (1982).

West Virginia Human Rights Act, *W. Va. Code* § 5–11–3(t), as amended. She wears a prosthesis, or glass eye. She was denied a promotion to which she was entitled because of the "deformed" appearance of her eye which resulted from and is part of her handicap. It is unlawful for any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if such individual is able and competent to perform the services required even if such individual is blind or handicapped. *W. Va. Code* § 5–11–9(a) [1981].

Therefore, Terrah Elynn Alfred should be compensated for the damages she suffered as a result of such unlawful discrimination.

The majority, however, mistakenly classifies this as a case of "perceived handicap," as that concept is delineated in a rule of the W.Va. Human Rights Commission (HRC), 6 *W. Va. Code of State Rules* § 77–1–1.7 [1982]. That rule in pertinent part expands the definition of handicapped person to include a person who does not in fact have a handicap, as defined by *Code*, 5–11–13(t), but who is "regarded as having such a handicap." The majority at great length and in scholarly depth analyzes whether that rule was validly promulgated. Such an analysis, while probably correct, is completely unnecessary. Terrah Alfred is handicapped.

This is a handicap (not perceived handicap) discrimination case. Even explanatory footnotes to the perceived handicap rule make it clear that the instant case is not one involving perception of handicap. Footnote 8 to the rules (published therewith) states in pertinent part:

> This regulation follows the federal [statutory] definition and expands upon the [West Virginia] statutory definition of 'Handicap' by including persons who are regarded as having a substantially limiting impairment and persons with a history of such impairment. This extension is necessary to make it clear that the law prohibits discrimination against persons who are *incorrectly perceived as*

*handicapped* as well as persons who are correctly perceived as handicapped.

> . . . .

> ... [D]iscrimination against persons who are regarded as being substantially impaired *even though they are not actually impaired* is discrimination rooted in prejudices or mistaken ideas about the capacities of persons who are not physically or mentally normal ... Examples of discrimination against persons who are regarded as being substantially impaired include ... *denial of employment to a person with a florid face on the mistaken assumption he or she has high blood pressure.*

(emphasis added)

The majority fails to perceive what is meant by the concept of perception of handicap, despite the fact that the rule makes clear that it involves the *incorrect* perception that the person has a handicap when in fact the person does not have a handicap. Terrah Alfred *does* have a handicap, so it is impossible to bring the circumstances of her case within the definition of perceived handicap as enunciated by the rule. Likewise, had the employer perceived the complainant could not perform the duties of the job due to her handicap, when in fact she could, that would also have been a mistaken perception on the part of the employer. But that certainly would not render it a perceived handicap case. The employer here did not mistakenly perceive that Terrah Alfred had a handicap. He discriminatorily perceived it as unsavory and he wrongfully denied her a promotion on that basis.

It is beyond comprehension why the majority goes through nineteen tortuous pages to determine whether the rule on perceived handicap was properly adopted. This woman was denied a promotion for which she was qualified and to which she was entitled—not because her employer mistakenly perceived she was handicapped, but because she is handicapped and the employer did not like the way she looks as a result of that handicap. That is clearly discrimination on the basis of handicap which is unlawful under *Code*, 5–11–9(a).

The majority's opinion explicitly permits the employer to decline to promote the complainant because her supervisor considered her appearance unacceptable for dealing with customers and vendors. This determination is insensitive, outrageous and wrong as a matter of law. As pointed out in a brief of amicus curiae, employers in the early days of civil rights litigation frequently argued that their customers would not frequent a store if they were to be served by a black person. The courts have uniformly rejected customer preference as a defense to human rights actions. *Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179, 1181 (7th Cir.1982); *Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1276–77 (9th Cir.1981); *Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385, 389 (5th Cir.1971), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971).

Despite the fact that "customer preference" has been held by the United States Supreme Court not to be a valid defense against handicap discrimination actions, and despite the fact that the majority says in a footnote that they don't approve of such a defense, they go on to condone it in this case.

Citing *McJunkin Corp. v. West Virginia Human Rights Comm'n*, 179 W.Va. 417, 369 S.E.2d 720 (1988), the majority contends that there was never a claim in this case of discrimination based on an actual, existing handicap, and therefore it would not be proper to hold the employer guilty of such unlawful discrimination. The language of the original complaint contained the following allegation:

4. I also believe that I have been discriminated against because I have a minor facial deformity resulting from a congenital eye defect. I believe Mr. Commodore regarded my eye as a handicap and that this prejudice on his part contributed to his decision to promote a less qualified person instead of me, even though I was able and capable of performing the essential functions of the job.

Because the claimant or her attorney may have inartfully worded the complaint does not negate the fact that unlawful discrimination was alleged. The holding of *McJunkin* makes it clear that "[t]he purpose of notice requirements is to make certain the prospective party in a contested case is aware of the impending proceeding and its substance with sufficient certainty to be in a position to answer and participate." 179 W.Va. at 420, 369 S.E.2d at 723. It is clear from an examination of the record below that the employer was fully apprised of the claim against him with sufficient certainty to answer and defend. Furthermore, the court may at any stage of the proceedings notice plain error. *W.Va.R.Civ.P.* 61; *See also W.Va.R.Evid.* 103(d); *Cf. W.Va.R.Crim.P.* 52.

Neither the Hearing Examiner nor the HRC relied on the perceived handicap rule in their decisions. It was never referred to in any manner in the Recommended Decision of the Examiner nor in the Opinion and Order of the Commission. Apparently, neither regarded the rule as a basis for determination of the case. Clearly, the Hearing Examiner (and the HRC) made findings of fact that 1) Ms. Alfred's handicap caused her deformity; 2) her deformity was the reason she was denied promotion; and, 3) her handicap was the underlying cause of the adverse employment decision, thus bringing her case within the statutory requirements for handicap discrimination. Appellate Courts must give deference to the findings of fact made by the trier of fact in discrimination cases. *Pullman–Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). This Court made a similar conclusion in Syl. Pt. 5, *State ex rel. West Virginia Human Rights Comm'n v. Logan–Mingo Area Mental Health Agency Inc.*, 174 W.Va. 711, 329 S.E.2d 77, 79 (1985), where we held that

[a] determination by the West Virginia Human Rights Commission, that an employer has accorded disparate treatment to members of different races, is a finding of fact which may not be reversed by a circuit court upon review, unless such finding is clearly wrong in view of the reliable, probative and substantial evidence on the whole record.

Many handicaps leave their victims with a physical appearance that may seem "unsavory" to non-handicapped people. Blind people may be glassy-eyed or have involun-

tary eye movements. People with spina bifada or other crippling diseases may walk with a pronounced limp. People with cerebral palsy may drool or have other involuntary body movements. Non-handicapped people often feel "uncomfortable" around handicapped people—a person in a wheelchair, an amputee, one with a withered hand ... or a sunken eye. These examples are not given to over-dramatize. They are the real-life experience of many physically handicapped people, as graphically pointed out by the affidavit of Jim Dickson, executive director of the Disabled Rights Equal Access Movement, a national coalition of disabled organizations, and himself a blind person.

One of the chief underlying reasons for anti-discrimination laws is to require employers to base their employment decisions on an individual's qualifications, as opposed to irrational conclusions about their limitations or deep-seated anxieties about their physical appearance. As the United States Supreme Court said in *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987), "society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment."

The majority opinion permits this most blatant and insidious form of handicap discrimination. Their mistake is tragic and wrong.