527 S.E.2d 155

**TOM'S CONVENIENT FOOD MART, INC., d/b/a Whitewater Information, Appellant,**

v.

**The WEST VIRGINIA HUMAN RIGHTS COMMISSION and Charles Akins, Appellees.**

**No. 25950.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1999.

Decided Dec. 13, 1999.

Dissenting Opinion of Justice Maynard Dec. 15, 1999.

Concurring Opinion of Chief Justice Starcher Jan. 6, 2000.

Charles R. Webb, Esq., Troy N. Giatras, Esq., Giatras & Webb, Charleston, West Virginia, Attorneys for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Mary Catherine Buchmelter, Esq., Deputy Attorney General, Robert D. Goldberg, Esq., John T. McFerrin, Esq. Assistant Attorneys General, Charleston, West Virginia, Attorneys for Appellees.

PER CURIAM:

This case is before this Court upon appeal of a final order of the West Virginia Human Rights Commission (hereinafter "Commission") entered on September 30, 1998.[1] Pursuant to that order, the Commission found that the appellee, Charles Akins, was discharged from his employment with the appellant, Tom's Convenient Food Mart d/b/a Whitewater Information, as a result of age discrimination and awarded him $6000.00 in back pay and incidental damages plus post-judgment interest. In this appeal, the appellant contends that Mr. Akins failed to present a prima facie case of age discrimination. The appellant also contends that the Commission erred when it failed to find that it had articulated legitimate nondiscriminatory reasons for discharging Mr. Akins. This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the Commission is affirmed.

I.

The appellee, Charles Akins, is 60–years–old.[2] He began working as a whitewater river guide in 1984. From 1989 through mid-March 1995, Mr. Akins was employed by Whitewater Information (hereinafter "WI"), a river rafting business located in Fayette County, West Virginia. In March 1995, the appellant, Tom's Convenient Food Mart (hereinafter referred to as "the appellant" or "Tom's"), purchased WI, but continued to operate the business under the same name. William Tom Louisos and William Tom Louisos, II, father and son, are the corporate officers of Tom's. They hired George Burgess to run WI and manage the personnel.

The events which let to the termination of Mr. Akins's employment with the appellant are disputed. Shortly after Tom's purchased WI, an organizational meeting was held with the WI employees. According to Mr. Akins, before the meeting started, Mr. Burgess commented to him that he was "too damn old to be a river guide." During the meeting, Mr. Burgess informed all of the WI employees, including Mr. Akins, that they could continue their employment and that it was his intention to manage WI like the previous owners.

After the meeting, Mr. Burgess met with Joe Freeman who was the manager of WI before it was purchased by Tom's.[3] The purpose of the meeting was to discuss the river guides and learn their various skills. According to Mr. Freeman, Mr. Burgess inquired about Mr. Akins in a tone suggesting some sort of hostility between them.[4] Mr. Burgess questioned Mr. Akins' "guiding abilities." Mr. Freeman told Mr. Burgess that Mr. Akins was an asset to the company and there was no one who was more dependable.

Because river rafting is a seasonal industry generally operating from April thru mid-October, the employees of WI are eligible for "low earnings" unemployment compensation in the off-season. When Tom's assumed control of WI in March 1995, most of the employees, including Mr. Akins, were receiving unemployment benefits. After the purchase, the employees continued to receive these benefits as they had before; the only difference was that Tom's was listed as the employer. As the manager, Mr. Burgess took the responsibility of reviewing and signing the low earnings slips.

On or about April 11, 1995, Mr. Akins went to WI's office to obtain a signature on his low earnings slip. He presented the form to Brenda Dow, WI's office manager who in the past had signed the forms. Ms. Dow informed Mr. Akins that the report now had to be signed by Mr. Burgess and he was presently out of the office. Mr. Akins waited two

---

1. W.Va.Code § 5–11–11 (1989) provides that any final order of the Commission may be directly appealed to this Court.

2. Mr. Akins was born on May 18, 1939.

3. Mr. Freeman voluntarily resigned from his employment with WI and never went to work for Tom's.

4. Apparently, Mr. Burgess had supervised Mr. Akins in the 1980s when they were both employed by a different entity. However, Mr. Burgess claimed during his testimony before the Commission that there was no "bad blood" between them and that he believed Mr. Akins was a good river guide.

to three hours for Mr. Burgess to return and apparently became upset because Ms. Dow would not sign the form. When Mr. Burgess finally arrived, he made Mr. Akins wait another hour before he signed his low earnings slip. Consequently, Mr. Akins and Mr. Burgess got into an argument. According to Mr. Akins, Mr. Burgess invited him outside to whip his "old gray-headed ass" and told him "[t]his is a young man's game." Mr. Burgess finally signed Mr. Akins's low earnings statement and told him to get out of his office. A few days later, Mr. Burgess telephoned Mr. Akins and told him he was fired. When asked "why," Mr. Burgess hung up the phone.

Mr. Burgess completely denies that he and Mr. Akins ever had an in-person verbal confrontation. He testified at the hearing before the administrative law judge that when he arrived at his office on April 11, 1995, Ms. Dow informed him that Mr. Akins had been there and had become upset and quarrelsome because she would not sign his low earnings slip.[5] Mr. Burgess testified that he called Mr. Akins at home and left a message for him to call the office. According to Mr. Burgess, Mr. Akins called back two or three days later at which point he fired him because he had been rude to Ms. Dow. Mr. Burgess claimed that after he was fired, Mr. Akins cursed him and a shouting/swearing match ensued.

Mr. Burgess testified that he phoned the Louisos to get permission to fire Mr. Akins.[6] He told them that Mr. Akins had got mad at Ms. Dow because she would not sign his low earnings slip and that he had started cursing her while she was on the phone taking reservations. Based on Mr. Akins' alleged treatment of Ms. Dow, the Louisos agreed with Mr. Burgess that Mr. Akins' employment should be terminated.[7]

---

5. Ms. Dow was not called as a witness by either party to testify at the hearing before the administrative law judge.

6. It is unclear as to whether Mr. Burgess requested permission to fire Mr. Akins before or after he had already fired him.

7. There is no evidence that the Louisos knew of Mr. Burgess' comments regarding Mr. Akins' age. In fact, the Louisos claimed that they did

Mr. Akins filed an age discrimination complaint with the Commission on May 11, 1995. A hearing was held before the administrative law judge on July 8, 1997. The administrative law judge ruled in favor of Mr. Akins and awarded him back pay, incidental damages, and post-judgment interest. Tom's appealed the ruling to the Commission which affirmed the administrative law judge's decision in a final order dated September 30, 1998. This appeal followed.

## II.

As its first assignment of error, the appellant contends that Mr. Akins failed to present a prima facie case of age discrimination. In Syllabus Point 3 of *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986), this Court held:

> In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va.Code § 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following:
>
> (1) That the plaintiff is a member of a protected class.
>
> (2) That the employer made an adverse decision concerning the plaintiff.
>
> (3) But for the plaintiff's protected status, the adverse decision would not have been made.

In this case, the evidence clearly shows that Mr. Akins, who was approximately 56 years old at the time of the events giving rise to his complaint, is a member of a protected class. It is also obvious that the appellant made an adverse decision concerning Mr. Akins as it terminated his employment. Thus, the appellant is essentially contending that Mr. Akins failed to show that he would not have been discharged from his employment but for his age.

---

not know how old Mr. Akins was until he filed his complaint. Nonetheless, Mr. Burgess was acting as an agent of the Louisos when he fired Mr. Akins. In Syllabus Point 3 of *Musgrove v. Hickory Inn, Inc.*, 168 W.Va. 65, 281 S.E.2d 499 (1981), we held that employers may be held liable for the acts of their agents when those agents are acting in the scope of their employment.

In *Conaway,* this Court discussed the type of evidence required to create a prima facie case of employment discrimination. We stated:

> Because discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required,. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion.

178 W.Va. at 170–71, 358 S.E.2d at 429–30 (footnote omitted). In the case *sub judice,* the Commission found that more likely than not age was a motivating factor in Mr. Burgess' decision to discharge Mr. Akins. The Commission based this decision on Mr. Burgess' conversation with Mr. Freeman, the two references to age made by Mr. Burgess during his argument with Mr. Akins, and the fact that younger employees who had engaged in similar behavior as Mr. Akins prior to his discharge were not disciplined or were disciplined less severely.

■ In reaching its conclusion, the Commission obviously resolved credibility determinations in favor of Mr. Akins. We have often recognized that the hearing examiner is in the best position to make credibility determinations and we must uphold the hearing examiner's factual findings that are supported by substantial evidence. *See Chico Dairy Co., Store No. 22 v. West Virginia Human Rights Comm'n,* 181 W.Va. 238, 241 n. 1, 382 S.E.2d 75, 78 n. 1 (1989); *Westmoreland Coal Co. v. West Virginia Human Rights Comm'n,* 181 W.Va. 368, 373 n. 6, 382 S.E.2d 562, 567 n. 6 (1989). In addition, this Court has held that the "West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties." Syllabus Point 1, *West Virginia Human Rights Comm'n v. United Transp. Union, Local No. 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981). After examining the record, we conclude that there was substantial evidence supporting the Commission's finding that Mr. Akins made a prima facie case of age discrimination.

■ Under our case law, "[t]he complainant's prima facie case of disparate-treatment employment discrimination can be rebutted by the employer's presentation of evidence showing a legitimate and nondiscriminatory reason for the employment-related decision in question which is sufficient to overcome the inference of discriminatory intent." Syllabus Point 2, *West Virginia Institute of Technology v. West Virginia Human Rights Comm'n,* 181 W.Va. 525, 383 S.E.2d 490 (1989). However, "[t]he complainant will still prevail in a disparate-treatment employment discrimination case if the complainant shows by the preponderance of the evidence that the facially legitimate reason given by the employer for the employment-related decision is merely a pretext for a discriminatory motive." Syllabus Point 3, *West Virginia Institute of Technology.* In this case, the appellant asserts that it articulated legitimate nondiscriminatory reasons for discharging Mr. Akins. Specifically, the appellant maintains that Mr. Akins was terminated because of his bad attitude and unbecoming conduct toward Ms. Dow.

■ The Commission apparently found that the reasons advanced by the appellant for Mr. Akins termination were simply a pretext for unlawful discrimination. The Commission stated that the appellant failed to meet its burden because the evidence showed that younger employees who engaged in similar behavior as Mr. Akins were not disciplined or were disciplined less severely. In fact, the appellant offered no evidence that others who engaged in the same or similar conduct were discharged. Again, after reviewing the record, we conclude that there was substantial evidence supporting the Commission's finding that the appellant failed to present evidence showing a legitimate nondiscriminatory reason for discharging Mr. Akins. Accordingly, for the reasons set forth above, the final order of the Commission entered on September 30, 1998, is affirmed.

Affirmed.

**616**

Judge FRED RISOVICH, II, sitting by temporary assignment.

Justice McGRAW dissents.

Justice SCOTT did not participate.

MAYNARD, Justice, dissenting:

(Filed Dec. 15, 1999)

I dissent in this case because I believe that the appellee failed to prove that he was fired because of his age.

The evidence in this case shows that the appellee was fired because he was rude and belligerent to his boss and to a co-worker. Employers in this State still have a right to terminate employees who are rude and who cause trouble in the workplace. Further, neither the Human Rights Commission nor this Court should be in the business of micromanaging the legitimate employment decisions of employers.

The result of this decision is that a disruptive employee is awarded an undeserved windfall because he hid behind the protection of our anti-discrimination law, and an innocent employer who rightly fired a troublemaker is punished. This is not the purpose of the Human Rights Act. Accordingly, I dissent.

STARCHER, Chief Justice, concurring:

(Filed Jan. 6, 2000)

The majority opinion is legally correct. I write separately to emphasize the fact that the liability of the defendant company, Tom's Convenient Food Mart, Inc., does not flow from any misconduct by its officers, William Tom Louisos and William Tom Louisos, II. These two exemplary businesspeople entrusted their company's personnel actions to a person who was found to have discharged that responsibility in an illegal fashion. As a result, the Louisos corporation is legally liable for his conduct, because it was within the scope of their agent's employment—even though neither Louisos personally did anything wrong.