# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: The Marriage of:**

**Guy L. Brown II,**
**Respondent Below, Petitioner**

**vs)   No. 16-0760** (Wood County 00-D-699)

**Sarah Jarvis, formerly Sarah Brown,**
**Petitioner Below, Respondent**

**FILED**

**October 13, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Guy L. Brown II, pro se, appeals the order of the Circuit Court of Wood County, entered July 14, 2016, affirming a March 30, 2016, order of the Family Court of Wood County. In its March 30, 2016, order, the family court denied petitioner's motion to amend the parties' February 28, 2001, qualified domestic relations order ("QDRO") on the ground that he requested the retroactive application of W.Va. C.S.R. § 162-1-7.2.a, which sets forth the current method for calculating a former spouse's share of a member/retirant's pension. Respondent Sarah Jarvis, by counsel Richard A. Bush, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner began employment as an officer of the West Virginia State Police in 1990. On December 29, 1990, the parties married. Subsequently, the parties separated on August 28, 2000, and respondent filed for divorce on September 13, 2000. The parties were divorced by a final order entered on February 21, 2001.

A week later, on February 28, 2001, the QDRO was entered giving respondent her share of petitioner's retirement pension.[1] In the QDRO, respondent's share of the pension was calculated

---

[1] In *Jones v. West Virginia Public Employees Retirement System*, 235 W.Va. 602, 606 n.3, (Continued . . .)

1

pursuant to W.Va. C.S.R. § 162-1-6.2.1 (2000), which provided as follows:

> In cases of divorce or legal separation whereby the member's or retirant's interest in his or her retirement account is subject to division pursuant to domestic relations law, that portion of the member's or retirant's retirement account which is subject to division by the Court shall be determined by the Board *by using the following formula, but only after the benefits are available to the member or retirant: a former spouse's interest shall be computed by the Board by multiplying the actual value of the retirement account by a fraction, the numerator being the number of years of contributing service incurred during the marriage, and the denominator being the total number of years of contributing service towards the pension.*

(emphasis added). Accordingly, under this calculation method, the years a member works after the marriage are counted toward his or her former spouse's share of the pension because those additional years worked are included in the denominator.

Several years later, in 2005, the West Virginia Consolidated Public Retirement Board ("Board") amended W.Va. C.S.R. §§ 162-1-1.1 through -1.9 through the legislative rulemaking process that concluded with the Legislature's approval of the regulatory amendments.[2] In those amendments, the Board set forth a new calculation method that became effective on September 1, 2005. The new calculation method is currently set forth in W.Va. C.S.R. § 162-1-7.2.a, which provides as follows:

> In cases of divorce or legal separation where the member's or retirant's interest in his or her retirement account is subject to division as marital property pursuant to state domestic relation law, that portion of the member's or retirant's retirement account which constitutes marital property and which is subject to division by a [QDRO] shall be determined by the Board *by using the following formula, but only after the benefits are available to the member or retirant at death, refund, disability retirement or retirement: the marital property portion of a member's or retirant's retirement benefit which is subject to division shall be computed by the Board by multiplying the Vested Accrued Retirement Benefit, less all benefits due to Exempt Service, by a fraction, the numerator being the number of years of contributing service incurred during the marriage, and the denominator being the total number*

---

775 S.E.2d 483, 487 n.3 (2015), we found that a QDRO is a "domestic relations order that recognizes existence of alternate payee's right to all or portion of benefits payable under pension plan."

[2]In *Chico Dairy Co., Store No. 22 v. West Virginia Human Rights Commission*, 181 W.Va. 238, 243, 382 S.E.2d 75, 80 (1989), we found that, pursuant to the rulemaking article of the State Administrative Procedures Act, West Virginia Code §§ 29A-3-1 to 29A-3-20, legislative rules require the Legislature's approval to be effective.

*of years of contributing service towards the pension at the date of separation or the date of divorce.*[3]

(emphasis added). Under the current calculation method, the years a member works after the marriage are not counted toward his or her former spouse's share of the pension.

In 2015, petitioner retired from the state police after 25 years of service, almost ten years of which occurred during the parties' marriage while approximately 15 years of those occurred after the parties separated on August 28, 2000.[4] Upon his retirement, petitioner began receiving his retirement benefits and respondent began receiving the benefits to which she was entitled pursuant to the 2001 QDRO.

On January 5, 2016, petitioner filed a motion to amend the 2001 QDRO to calculate respondent's share of his pension based on the current calculation method rather than the prior method that was in effect in 2000. The family court held a hearing on the motion on March 13, 2014. Neither party presented a calculation of the benefits due to respondent based on the current calculation method. However, the parties agreed that the difference in benefits between what respondent is receiving pursuant to the 2001 QDRO and what respondent would receive under the current calculation method is "substantial."[5]

Respondent opposed petitioner's motion to amend the 2001 QDRO on the basis that the QDRO had already been implemented given the Board's 2015 decision to begin paying benefits to respondent. Respondent further argued that the January 5, 2016, motion to amend the 2001 QDRO was not timely filed given the length of time between the motion and entry of the QDRO it sought to amend. However, respondent conceded that there might be ways that the family court could reform the motion to make it procedurally proper. Accordingly, the family court ruled on the merits of petitioner's motion and denied it as requesting the retroactive application of W.Va. C.S.R. § 162-1-7.2.a to a valid QDRO from 2001. The family court memorialized its ruling in an order entered on March 30, 2016, which petitioner appealed to the circuit court.

By order entered on July 14, 2016, the circuit court first found that the Board implemented the 2001 QDRO by commencing the payment of benefits due to respondent in 2015. Second, the

---

[3]W.Va. C.S.R. § 162-1.2.f defines "Vested Accrued Retirement Benefit" as "the benefit due to the member or retirant as of the date specified by the parties in the [QDRO]."

[4]W.Va. C.S.R. § 162-1-7.2.b provides that the parties and/or the family court may use either the date of separation or the date of divorce to calculate the number of years a member/retirant worked during the marriage.

[5]Respondent estimates that a recalculation based on the current calculation method would reduce the total benefit she receives pursuant to the 2001 QDRO by $200,000 over the course of her life expectancy.

circuit court determined that there was no evidence that the Legislature intended for the 2005 change to a new calculation method to have retroactive effect. Third, the circuit court found that more than four years lapsed between the entry of the 2001 QDRO and the September 1, 2005, effective date of the change to a new calculation method. Fourth, the circuit court noted that ten years lapsed between the 2005 change and the filing of petitioner's January 5, 2016, motion to amend the 2001 QDRO. Fifth, the circuit court found that the benefits due respondent would be substantially reduced if the 2001 QDRO would be amended. Sixth, the circuit court determined that nothing in the 2001 QDRO reflected an intent to have the level of benefits paid thereunder to be affected by subsequent changes to W.Va. C.S.R. §§ 162-1.1 through -1.9. Accordingly, the circuit court affirmed the family court's denial of petitioner's motion on the basis that it requested the retroactive application of 162 W.Va.C.S.R. § 1-7.2.a to a valid QDRO from 2001. Petitioner now appeals the circuit court's July 14, 2016, order.

We review the matter under the following standard:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

On appeal, petitioner contends that the method of calculating a former spouse's share of a member's pension that has been in effect since 2005 is the more equitable method because it does not allow a former spouse to benefit from the years a member has worked following a divorce or legal separation. Respondent counters that, regardless of the respective merits of the two calculation methods, the circuit court properly affirmed the family court's denial of petitioner's motion to amend the parties' 2001 QDRO.

In affirming the family court's order that there was no justification for the retroactive application of W.Va. C.S.R. § 162-1-7.2.a to a valid QDRO from 2001, the circuit court found that several factors were relevant. However, we address only two of those factors. We find that the Board's implementation of the 2001 QDRO in 2015 and the lack of clear legislative intent to apply the new calculation method to QDROs approved by the Board prior to 2005 are dispositive of petitioner's appeal, and we will discuss them together.

"The Board shall not honor as a [QDRO] any [d]omestic [r]elations [o]rder seeking to divide a pension benefit of a member, retirant or beneficiary which does not meet the requirements of this rule." W.Va. C.S.R. § 162-1-7.2; *see Jones v. West Virginia Public Employees Retirement System*, 235 W.Va. 602, 613-14, 775 S.E.2d 483, 494-95 (2015) (finding that the Board's duty is "to determine whether the QDRO meets specific statutory criteria") (internal quotations and citations omitted). However, in syllabus point 4 of *Jones*, we held that "[a] family court has the necessary authority to . . . enforce, revise, modify, or amend a domestic relations order for the purpose of establishing such order as a [QDRO]." *Id.* at 605, 775 S.E.2d at 487. We found in *Jones*

that the submission of a new QDRO was necessary because the Board properly refused to approve two prior orders as QDROs because they contained provisions not permitted by law. *Id.* at 611-619, 775 S.E.2d at 492-500.

In this case, W.Va.C.S.R. § 162-1-7.2.a, which sets forth the calculation method that has been in effect since 2005, is treated as a statutory enactment given its approval by the Legislature.[6] "A statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute." Syl. Pt. 3, *Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 270 S.E.2d 178 (1980); *see Jones*, 235 W.Va. at 609, 775 S.E.2d at 490 (finding that a legislative rule that became effective subsequent to the Board's grant of disability retirement benefits was inapplicable). We find that the Legislature clearly expresses itself when it intends a domestic relations statute to have retroactive effect. For example, as respondent points out, when the Legislature created a broad statutory right to equitable distribution of marital property in 1984, it specifically provided for the retroactive application of those statutory amendments as follows:

> Amendments made to the provisions of former article two of this chapter during the regular session of the Legislature in the year one thousand nine hundred eighty-four, shall be of retroactive effect to the extent that such amended provisions shall apply to the distribution of marital property, but not an award of spousal support, in all actions filed under the provisions of former article two of this chapter after the twenty-fifth day of May, one thousand nine hundred eighty-three, or actions pending on that date in which a claim for equitable distribution of marital property had been pleaded: Provided, That the amendments are not applicable to actions where, prior to the effective date of the amendments, there has been a final decree entered or the taking of evidence has been completed and the case has been submitted for decision.

W.Va. Code § 48-7-501.

Nothing in W.Va. C.S.R. § 162-1-7.2.a or its accompanying regulations evidences an intent that the current calculation method should be used to calculate benefits in cases where a QDRO was approved prior to the method's 2005 adoption.[7] Therefore, we find that the Board's 2015 implementation of the 2001 QDRO indicates that the 2005 adoption of a new calculation method did not deprive the 2001 order of its status as a valid QDRO despite its use of the former calculation method. Otherwise, the Board would not have implemented the 2001 QDRO. *See* 162 W.Va.C.S.R. § 1-7.2.

---

[6]In *Appalachian Power Co. v. State Tax Department of West Virginia*, 195 W.Va. 573, 584, 466 S.E.2d 424, 435 (1995), we stated that, because legislative rules are authorized by acts of the Legislature, we treat them as statutory enactments.

[7]*See* W.Va. C.S.R. §§ 162-1-1.1 through -1.9.

In syllabus point 4 of *Jones*, we held that a family court has the authority to amend an order for the purpose of establishing it as a QDRO. 235 W.Va. at 605, 775 S.E.2d at 487. However, the reason for our decision in *Jones*—the lack of a valid QDRO—was not present in the instant case to provide the family court a basis for amending the 2001 order petitioner sought to amend. Therefore, we conclude that the family court properly denied petitioner's motion to amend the parties' 2001 QDRO.

For the foregoing reasons, we affirm the circuit court's July 14, 2016, order upholding the family court's March 30, 2016, order denying petitioner's motion to amend.

Affirmed.

**ISSUED:** October 13, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

6